## City of Tyler v. L. L. Jester & Company.

### No. 1271. Decided February 25, 1904.

**1.—City—Funding Indebtedness—Notes—Bonds.**

A city, under Revised Statutes, article 465, had power to issue its promissory notes for the purpose of funding outstanding debts, and such notes, bearing interest for which coupons were attached, were not bonds within the meaning of statutes regulating the issuance of bonds. (P. 359.)

**2.—City—Water Company—Contract—Monopoly.**

Though the contract of a city with a water company should be held void as creating a monopoly, the city was liable to the company for water received by it under the contract. (Pp. 359, 360.)

**3.—City—Funding Debt—Creation of Debt—Levy of Taxes.**

The issuing of interest bearing notes by a city for funding outstanding indebtedness, was not the creation of a debt which required the levy of taxes to provide for the interest and sinking fund. (P. 360.)

**4.—City—Contract—Creation of Debt.**

Making a contract between a city and a water company for furnishing water through a series of future years did not create a debt against the city, its liability only arising from the use of the water during each year; and the validity of such contract was not dependent on the sufficiency of the current revenues for the year in which the contract was made, which it would be presumed might be thought, in good faith, to be sufficient, where such question was not raised. (Pp. 360, 361.)

**5.—Same—Deficiency in Current Revenue—Debt.**

A contract by a city, for current expenses of future years, intended in good faith to be met out of the current revenues of the respective years, remains a valid debt of the city, though not so paid, which it should discharge out of the revenues for subsequent years in excess of their current expenses and may fund in obligations to be so discharged. Rev. Stats., arts. 465, 466; Corpus Christi v. Woessner, 58 Texas, 462. (P. 361.)

**6.—City—Contract—Ordinance—Resolution.**

A city need not enact an ordinance to enable its officers to execute contracts for current charges of the administration of its affairs; the authority may be given by resolution entered in the minutes of the council. (P. 361.)

Error to the Court of Civil Appeals for the First District, in an appeal from Smith County.

L. L. Jester & Co. sued the city of Tyler upon certain promissory notes, and having judgment, though for less than sued for, the city appealed. The judgment was reversed and rendered for appellee for a less amount than the recovery below, and the city thereupon obtained writ of error.

*John M. Duncan* and *T. N. Jones,* for plaintiff in error.—The Court of Civil Appeals erred in holding the original obligations sued on by plaintiff below were not in form, substance and effect bonds of the city within the meaning and intent of constitutional and statutory provisions authorizing, limiting and regulating the issuance of bonds by cities. Simonton on Mun. Bonds, sec. 4, p. 11, and entire chap. 8; 1 Dillon on Mun. Corp., secs. 412, 473, 486; City of Austin v. Nalle, 85 Texas, 542, 543; City of Waxahachie v. Brown, 67 Texas, 519, 530.

The Court of Civil Appeals erred in declining to hold that the obligations sued on, by reason of being made payable in less than ten years,

were void. Acts of 1875, sec. 78, p. 256; Rev. Stats. of 1895, title 18, art. 468; Peoples Bank v. School District, 28 Law. Rep Ann., 642; Barnum v. Okolona, 148 U. S.; 393.

The Court of Civil Appeals erred in failing and declining to hold that the obligations sued on were and are null and void upon the ground that the proof showed that the aggregate amount of bonds theretofore issued and then outstanding by the city of Tyler exceeded 6 per cent of the assessed valuation of all property within the city subject to ad valorem tax. Sayles' Stats., art. 466; City of Waxahachie v. Brown, 67 Texas, 530.

It appearing from the evidence that the obligations sued on were issued in refund of indebtedness accruing subsequent to the adoption of amended section 9, article 8, of the State Constitution, the Court of Civil Appeals erred in declining to hold that the city was without power to make such refund, or to levy taxes to meet same, and that therefore such obligations were void. Constitution of 1876, art. 8, sec. 9, and amendments thereto.

The Court of Civil Appeals erred in declining to hold that the obligations sued on were void because no procedure was had in connection with such bonds or obligations as is provided by title 25, article 918d, Sayles' Statutes. Arts. 918d, 918e, 918f, title 25, Sayles' Statutes.

The Court of Civil Appeals erred in holding that although at the time of the execution of the obligations sued on, and at the time of the execution of the several notes and warrants in satisfaction of which the notes sued on were executed, the appellant had exhausted its power to levy special taxes to provide for the payment of interest and the creation of a sinking fund to pay the indebtedness thereby created, such constituent notes and warrants and the obligations sued on were not for that reason invalid. McNeal v. City of Waco, 89 Texas, 83; Gould v. City of Paris, 68 Texas, 511; Nalle v. City of Austin, 42 S. W. Rep., 780-782; City of Terrell v. Dessaint, 71 Texas, 772; Kiehl v. South Bend, 36 Law. Rep. Ann., 229; Doon Township v. Cummins, 142 U. S., 370.

The Court of Civil Appeals erred in holding that although it be true that the future revenues of the city derived from taxation levied for general purposes could not be charged with the payment of the obligations sued on nor the constituent paper, and although the law did not authorize the levy of a special tax to pay the same, that these facts do not render the obligation void, all such obligations being payable out of the current revenues of future years, and no tax was levied to meet the same.

The Court of Civil Appeals erred in holding that for the execution of the constituent notes an ordinance of the city authorizing them to be executed was not necessary to their validity, and that any order or resolution of the city council entered upon the minutes was sufficient authority for the execution of the notes, and in holding that there was any order, resolution or ordinance authorizing any of such constituent notes.

Noel v. City of San Antonio, 33 S. W. Rep., 265; City of Waco, v. Prather, 90 Texas, 80; City of Waco v Prather. 35 S. W. Rep., 958; City of Tyler v. Adams, 2 Texas Ct. Rep., 278; Sayles' Stats., art. 465; 1 Dillon Mun. Corp., secs. 507, 488, and note.

The Court of Civil Appeals erred in treating the case as a suit for hydrant rental upon the original water contracts, or in the alternative upon a quantum meruit for water furnished, when there was nothing in the pleadings to authorize either the court below or the Court of Civil Appeals to so treat appellee's claims for water or hydrant rental, there being no declaration upon the contracts nor upon a quantum meruit.

The Court of Civil Appeals erred in holding that the period of limitation, in considering appellee's right to recover upon the constituent paper, must be calculated to the date of the issuance of plaintiff's obligations sued on, the pleadings showing that the constituent paper as such was not declared upon by appellee until February 19, 1902, when it was all barred by limitation.

The Court of Civil Appeals erred in holding that although the constituent paper was payable in future years, not contemplated to be paid out of the current revenues of the current year, that no tax at the time of its issuance was levied to meet them and no authority of law to levy such tax, that nevertheless such paper was valid.

The Court of Civil Appeals erred in holding that the original water ordinance and contract was not void as creating a monopoly contrary to the Constitution and public policy, and that it could afford a basis for a recovery upon the constituent paper given for hydrant rental and water under such contract; and in holding that the water, through the furnishing of which arose the constituent paper, was not furnished under the original contract of 1887, but under one of 1889, when in fact the contract of 1889 was but an amendment and extension of the original contract, and provided for the furnishing of fifty additional hydrants, the other fifty being furnished and continued to be furnished under the original contract and ordinance of 1887.

The Court of Civil Appeals erred in holding that it was not shown at the time the contract for the rent of the hydrants was made, nor at the time the hydrants were furnished the city, that the general revenues of the city were not sufficient to pay the rentals, whereas, under the holding of the Court of Civil Appeals that the water contract was made in 1889, it appears from the facts that the current expenditures for that year were largely in excess of the probable current revenue from all sources, and that the water company took notes payable in future years to cover its hydrant rental without the levy of any tax to pay them.

The Court of Civil Appeals erred in treating the case in some of its features as a suit upon a quantum meruit, and in some as a suit upon the original obligations sued on and in others as a suit upon the constituent paper, and in wholly ignoring the date upon which appellee first declared upon the constituent paper.

The Court of Civil Appeals erred in holding' that notwithstanding the obligations sued on did represent the creation of a debt as to attorneys' fees, and as to constituent indebtedness barred by limitation and as to compounded interest, and notwithstanding, under the law and the then condition of city taxation, there was no authority to levy a tax to meet the interest and create a sinking fund for said obligations sued on, that still it was valid to the extent found by the Court of Civil Appeals; and in declining to hold as a necessary conclusion from its statement and findings in that connection that the entire issue of obligations originally sued on was invalid and void.

The Court of Civil Appeals erred in declining to find and hold that when the water company accepted promissory notes payable in future years out of current revenues, it abandoned its right to recover under the original water contract, and that the court below erred in treating plaintiff's declaration as one upon the water contract and ignoring the defense made to the notes.

The Court of Civil Appeals erred in declining to find and hold that the water company or other creditor of the city having claims against the current expense funds of the current year, in accepting warrants or notes maturing at such time as would make them a charge upon the resources of the city for future years, thereby waived its claim against the current expense for that particular year, gave all claims for current expense for that year precedence, and was estopped to deny that his claim was represented in the excess of current expenses over current revenues for the particular year in which it originated, and that thus, by giving such promissory notes, a new debt payable out of a different fund was created, requiring a tax levy at its origin to meet it when due; and in holding that although the constituent notes and warrants were made payable out of the current revenue of future years, were not provided for by the levy of a tax at the time they were executed, and that all probable current revenues for general expenses had been exhausted at the time of such issuance, that this was not the creation of a debt and that the instruments were still valid. Citizens Bank v. Terrell, 78 Texas, 450; Noel v. City of San Antonio, 11 Texas Civ. App., 586; Kuhls v. Laredo, 27 S. W. Rep., 291; Millsap v. Terrell, 60 Fed. Rep., 195; Biddle v. City of Terrell, 82 Texas, 336; City of Sherman v. Smith, 35 S. W. Rep., 294, 12 Texas Civ. App., 583; .Mineralized Rubber Co. v. Cleburne, 22 Texas Civ. App., 622; Gould v. Paris, 68 Texas, 511.

The Court of Civil Appeals erred in holding that there might be a recovery upon certain of the constituent notes for water on the water contracts with the city, when said contracts were not sued on nor made a basis of recovery by the plaintiff below either in the alternative or otherwise.

The Court of Civil Appeals erred in declining to hold that the water franchise and contracts in evidence providing for the establishment of a monopoly in giving to L. B. Fish and associates the exclusive franchise

to occupy the streets and furnish water to the city of Tyler, constituting an irrevocable contract covering a period of thirty years after date, was contrary to the Constitution and laws, against public policy and void, and in holding that the original and supplementary contracts were not so related and interdependent as that both should be considered together and held void, if they could be at all considered under the state of the pleadings. Constitution, art. 1, sec. 26; City of Brenham v. Brenham Water Co., 67 Texas, 547; Altgelt v. City of San Antonio, 81 Texas, 436; City of Austin v. Walton, 68 Texas, 507; City of Austin v. Nalle, 85 Texas, 549; Edwards County v. Jennings, 89 Texas, 620.

The Court of Civil Appeals erred in failing and declining to hold that all of the constituent paper and all claims of plaintiff below, even upon a quantum meruit or upon the water contracts, were barred by the statute of limitations on the 19th day of February, 1902, when appellee filed his supplemental petition, for the first time declaring in the alternative for a recovery upon the constituent paper.

The Court of Civil Appeals erred in failing and declining to find either in the original decision or on the motion for rehearing, as a conclusion of fact, that at the time the obligations sued on were executed the aggregate amount of bonds theretofore issued by the city of Tyler and then outstanding exceeded 6 per cent of the assessed value of all the property within the city subject to ad valorem taxes.

*Cain & Knox,* for defendants in error.—"Debt" and "current debt" when applied to municipalities in Texas have each a fixed and definite legal meaning, distinctly different; and the recitals in the notes and ordinance to the effect that on the 20th day of August, 1897, the city was then indebted in the sum of $17,000, which indebtedness was then evidenced by notes, warrants and written evidences of debt which were then proposed to be surrendered; that said city of Tyler was then unable to pay said indebtedness, but desired to procure extension of time in which to pay it, and the holder was willing to accept new notes extending time of payment upon the conditions provided in the ordinance; that the debt which was then acknowledged to be in existence was current debts incurred in previous years, estopped the city from now attacking the validity of the original debt, because the city council by express terms of the Constitution and laws is vested with power to create debts in the current operation of the city, and no record is provided by law from which it can be determined at any time what amount of debt has been incurred in any one year which is a charge upon the revenues of that year, and there is no means of determining, in advance of the collections of taxes for a particular year, together with the fines and penalties, licenses, occupation and poll taxes, just what the current revenues of that year will be, but after the year is passed and a debt has been incurred which is a just and legal debt, not barred by limitation, the city council is vested with the power of funding such debt and paying it out of the future revenues. Therefore the recitals in the notes and ordi-

nance necessarily import that the city council finds as a fact that this is a current debt not in excess of the probable current revenue in the year of its creation, which did not require provision to be made for the payment otherwise than out of the general revenues, and being clothed with such discretion and there being no record provided by law to which the creditors could look and determine whether or not the resources of the city had been exhausted when the debt was incurrd, and as to whether or not it was an unprovided for liability, but the city, afterwards issuing new notes, renewing the same and therein asserting the debt to be in existence, is estopped from asserting facts which would show it was invalid at the time it was incurred. Citzens Bank v. Terrell, 78 Texas, 459; City of Little Rock v. Merchants Nat. Bank, 98 U. S., 314; Chandler v. Town of Attica, 18 Fed. Rep., 299; Moultrie County v. Rockingham Savings Bank, 92 U. S., 631; Marcy v. Oswego Township, 92 U. S., 637; Jasper County v. Ballou, 103 U. S., 745; Sherman County v. Simons, 109 U. S., 737; Commissioners of Douglas County v. Bolles, 94 U. S., 107; Supervisors v. Schenck, 5 Wall., 782; Tulare Irrigation District v. Alfred Shepard, 22 U. S. Sup. Ct. Rep. No. 11, p. 531; Waite v. Santa Cruz, 184 U. S., 302; Ind. School Dist. v. Rew, 111 Fed. Rep., 1.

Plaintiff was an innocent purchaser for value before maturity and the burden was upon the defendant city to allege and prove invalidity of the notes. All irregularities or defects as to the form and manner in which the constituent paper was originally issued were cured and waived and the unauthorized acts of its officials ratified by the execution of the notes in suit. So that the only defense properly raised by defendant in all its pleading was that the original debt evidenced by the constituent paper was incurred at a time when all the probable available revenues of the particular year or years in which it was created had been exhausted in the payment of other current debts created prior thereto in the same year or years, and that therefore these debts represented an excess of current expenses over current revenues for the respective years in which they were actually created, and no tax having been levied to pay same, they were void. As to this defense the record shows that defendant wholly failed in its proof, and the court should have directed a verdict for plaintiff.

Plaintiff a bona fide holder: City of San Antonio v. Mehaffy, 96 U. S., 312; Pana v. Bowler, 107 U. S., 529; Commissioners v. Bolles, 94 U. S., 107.

Burden of proof on the city: Wright v. City of San Antonio, 50 S. W. Rep., 407; Winston v. City of Fort Worth, 47 S. W. Rep., 746; McNeill v. City of Waco, 89 Texas, 88; Crebs v. City of Lebanon, 98 Fed. Rep., 549; Sayles' Texas Plead., 257; 1 Story's Eq. Plead., 257.

New notes cured all defects in constituent paper: Chandler v. Town of Attica, 18 Fed. Rep., 299; Jasper County v. Ballou, 103 U. S., 745; City of Little Rock v. Merchants Nat Bank, 98 U. S., 308.

Instruments intended by the parties as notes to evidence and extend

an existing debt whereby the relations of the parties as debtor and creditor is in no way changed, can not be said to be negotiable bonds. Negotiable bonds under the laws of Texas are instruments or the means used for pledging the credit of a municipality and raising funds to be expended in a particular purpose. Such instruments are required by statute to be of certain denomination, to mature in a certain period, sold only at a certain price, are each and all interdependent instruments, maturing at the same time and their payment provided for by the same appropriation of taxing power, and are primarily intended for sale upon the open markets; whereas the notes in suit are each independent instruments maturing at different dates, and they show upon their face that they were merely intended to evidence and extend an existing debt which the city is unable to pay.

City may issue notes: Rev. Stats., arts. 465-471; City of Mineral Wells v. Darby, 51 S. W. Rep., 351; City of Corpus Christi v. Woessner, 58 Texas, 462.

A city of more than 10,000 inhabitants can so act and exercise the powers of a city of the first-class without a special charter, and the defendant having exercised its right to take a census, declared itself to be a city of more than 10,000 inhabitants, and proceeded to operate as such city, is estopped from now asserting that the census was improperly or illegally taken, and that it did not have 10,000 inhabitants. The city had the implied power to take the census, and there being no law regulating the manner in which it should exercise such power its finding and declaration as to the number of inhabitants it contained is conclusive against it, and such finding is not subject to collateral attack as is attempted by the defendant in its answer.

City may act without special charter: Muller v. City of Denison, 1 Texas Civ. App., 296; Voorhees v. Mayor of Houston, 70 Texas, 336.

City estopped to attack census: Smith v. Board County, 45 Fed. Rep., 729; O'Bryan v. Owensboro, 68 S. W. Rep., 859.

If it be conceded that the city contained less than 10,000 inhabitants, it does not follow that the notes are void, because they were merely the renewal or extension of an existing debt, which it could not then pay, and not the creation of a debt within the meaning of the Constitution and laws. To say that the notes were void because the city had less than 10,000 inhabitants would be to assert that a city which owes a just debt, which it is unable to pay at present, can not evidence or extend the same to a time when it may be able to pay, notwithstanding it obligated itself to make provision therefor out of the unappropriated revenues of future years. If the debt was valid at its inception it can not become invalid because the debtor acknowledged or evidenced it in writing and the creditor extended the time of payment. The law does not discharge a municipality from its obligations because of present inability to pay nor because the creditor is willing to extend his debt to a period when the debtor may be able to pay. Such a proposition is repugnant to common sense and common honesty. A note is not the debt but merely evidence

of the debt. The notes in suit neither create a debt nor increase the existing debt of the city. They merely change the form of existing indebtedness. City of Mineral Wells v. Darby, 51 S. W. Rep., 351; City of Huron v. Second Ward Savings Bank, 86 Fed. Rep., 272; Board of Comrs. Lake County v. Platt, 79 Fed. Rep., 567; Rollins & Sons v. Commissioners of Gunnison County, 80 Fed. Rep., 692; In re State Bonds (Me.), 18 Atl. Rep., 291; Powell v. City of Madison, 107 Ind., 110; City of Los Angeles v. Teed (Cal.), 44 Pac. Rep., 580.

The validity of the notes does not depend on the levy of a tax. The debt was already in existence and it was the duty of the city to provide for payment. Mitchell County v. Bank, 91 Texas, 361; Wright v. City of San Antonio, 50 S. W. Rep., 407; Thornburgh v. City of Tyler, 16 Texas Civ. App., 446; Morrill v. Smith County, 33 S. W. Rep., 907; Bassett v. City of El Paso, 88 Texas, 174.

That part of article 465 of Revised Statutes which authorizes the city council to pass all necessary ordinances, etc., must be considered in connection with the powers conferred in other articles, together with the implied powers of a city; and when so considered it would seem not to apply to the execution of a note or warrant to evidence an existing debt payable out of the general funds, because that is a mere ministerial act and not legislative in character. The Legislature could not have intended to require that an ordinance should be passed to authorize the issuance of notes or warrants where no tax levy or permanent rule of action is undertaken to be provided. "All necessary ordinances" means an ordinance in any instance where the council in the particular case exercises legislative functions, such as levying a tax which the law requires and makes necessary to be done by ordinance. City of Williamsport v. Commonwealth, 84 Pa. St., 487; First Municipality of N. O. v. McDonough, 2 Robinson (La.), 242-250; Barry v. Merchants Exchange Co., 1 Sandf. (N. Y.), 280; Bank v. Chillicothe, 7 Ohio (Pt. 2, 31), 354; Curtis v. Leavitt, 15 N. Y., 62.

The city council, acting under the general law, seems empowered to proceed either by resolution or ordinance. Rev. Stats., art. 471; Conklin v. City of El Paso, 44 S. W. Rep., 882.

Note: If article 471 does not apply then neither does article 472, and the debt would not be barred unless the city saw fit to invoke the statute of limitations.

If the council exceeded its authority in executing the constituent notes without first passing an ordinance authorizing them, nevertheless it was a mere irregularity which could be and was cured by the ordinance in suit which ratified the previous acts of the city officials, and such ratification relates back to the execution of the constituent paper and is equivalent to prior authority. State v. Cowgill & Hill Mill Co., 57 S. W. Rep., 1008; Mecham on Agency, sec. 167, quoted by Neill, Justice, in Texas C. C. & M. Assn. v. Dublin Compress & Mfg. Co., 38 S. W. Rep., 410; City of San Antonio v. San Antonio St. Ry. Co., 22 Texas Civ. App., 153; Day Land and Cattle Co. v. State, 68 Texas, 526; Mis-

souri P. Ry. Co. v. Brazzil, 72 Texas, 239; 15 Enc. of Law, 1 ed., p. 1102, citing numerous authorities, amongst them, Marshal Co. v. Schenck, 5 Wall., 772, and Bank of Columbia v. Patterson, 7 Church, 299; 17 Am. and Eng. Enc. of Law, p. 244; 19 Enc. of Law, 1 ed., p. 471, and note p. 472, citing numerous authorities, amongst them, Clark v. Washington, 12 Wheat., 40; Bissell v. Jeffersonville, 24 How., 287; State v. Hennepin County, 7 Am. and Eng. Corp. Cases, p. 206; Simonton on Mun. Bonds, secs. 247, 248, 50-221; 1 Dillon on Mun. Corp., sec. 448.

Notes executed by the city council to evidence a valid debt without an authorizing ordinance are not void, but at most only voidable; hence so long as the city does not repudiate such obligations the acts of its officers may be ratified. Notes not issued in legal form can and do constitute sufficient consideration for new notes issued in proper form, and the statute of limitations is not put in motion because the holder of such notes not yet due could not maintain suit, because the city would have the power to ratify by passing a proper ordinance. 1 Dillon on Mun. Corp., 4 ed., sec. 448, and authorities cited in note 1; Little Rock v. Bank, 98 U. S., 308.

A void act is one not binding on either party and not susceptible of ratification. Murchison v. White, 54 Texas, 81; Cummings v. Powell, 8 Texas, 85; Gullett v. O'Conner, 54 Texas, 408; 28 Enc of Law, 1 ed., p. 473.

The constituent notes are copied in the record from pages 133 to 142, inclusive, from which it will be seen that the earliest date of maturity is July 2, 1894, and the latest May 4, 1896, hence none of them were barred August 20, 1897, date of notes in suit. Appellant's theory of limitations is that the constituent notes are void and the original debt is therefore barred. 1 Dillon on Mun. Corp., 4 ed., sec. 448, and authorities cited in notes thereunder.

The contract between the Tyler Water Company and the city of Tyler under which the constituent debt was incurred is a valid contract. Waco Water and Light Co. v. City of Waco, 27 S. W. Rep., 676; City of San Antonio v. French, 80 Texas 575; City of Brenham v. Brenham Water Co., 67 Texas, 542; City of Walla Walla v. Walla Walla Water Co., 172 U. S., 1; City of Valparaiso v. Gardner, 7 Am. and Eng. Corp. Cases, 629; City of East St. Louis v. St. Louis Gas Co., 98 Ill., 415; City of Indianapolis v. Indianapolis G. L. & C. Co., 66 Ind., 396; Dillon on Mun. Corp., 3 ed., secs. 473, 474.

When a divisible part of a contract is ultra vires, but that part is neither malum in se nor malum prohibitum, the remainder of the contract may be enforced, unless it appears from a consideration of the entire agreement that it would not have been made independently of the part which is void.

The invalidity of the exclusive grant by the city is no defense to an action for the rents the city promised to pay for use of the hydrants, after the works had been constructed according to contract and accepted

by the city. The contract having been substantially performed, no one who does not infringe or threaten to infringe the exclusiveness of such grant can be heard to allege its invalidity. Illinois Trust and Savings Bank v. Arkansas City, 76 Fed. Rep., 271; Kimball v. City of Cedar Rapids, 100 Fed. Rep., 803; Huntington v. Worthen, 120 U. S., 97; Jaehne v. New York, 128 U. S., 189; Oregon Steam Nav. Co. v. Winsor, 20 Wall., 64; Reagan v. Farmers L. & T. Co., 154 U. S., 362.

If it be conceded that the contract was exclusive and monopolistic, as contended by appellant, then we say it is not void, but merely voidable, and as to the water furnished and received under said contract, the city is bound to pay the contract price. City of Brenham v. Brenham Water Co., 67 Texas, 542; City of San Antonio v. French, 80 Texas, 575; Waco Water and Light Co. v. City of Waco, 27 S. W. Rep., 676; Fisk v. Police Jury of Jefferson, 116 U. S., 131; Nicholasville Water Co. v. Board of Councilmen (Ky.), 36 S. W. Rep., 549.

The city can not accept the benefits and repudiate the burdens of its contract. It is bound to pay for water already received on the grounds of estoppel. Illinois Trust and Savings Bank v. Arkansas City, 76 Fed. Rep., 293, and numerous authorities there cited; Hitchcock v. City of Galveston, 96 U. S., 341; City of Chicago v. Norton Milling Co., 63 N. E. Rep., 1043.

The debt for hydrant rental was a current expense, payable out of the general funds, and did not require any special provision for payment. Denison v. Foster, 37 S. W. Rep., 167; City of Cleburne v. Cleburne Water Co., 14 Texas Civ. App., 231; Lamar Water and L. Co. v. City of Lamar, 39 S. W. Rep., 768.

The court erred in refusing to give special charge number 5, requested by plaintiff, and in instructing the jury that the constituent paper issued in part payment for land for cemetery purposes is a void obligation, because the evidence showed that the land was deeded upon condition that the city would make provision for the warrants or checks which were given therefor, and the promise of the city was still outstanding and capable of being enforced when the notes in suit were executed, August, 1897. Rev. Stats., art. 452; Mineralized Rubber Co. v. City of Cleburne, 22 Texas Civ. App., 622; Mitchell County v. Bank, 91 Texas, 361; Wright v. City of San Antonio, 50 S. W. Rep., 406; Hitchcock v. Galveston, 96 U. S., 341; Little Rock v. National Bank, 98 U. S., 314; 1 Dillon on Mun. Corp., 4 ed., sec. 460.

The court erred in refusing to give special charge number 6, to the effect that the city was estopped by its declaration that it contained over 10,000 inhabitants and by its other acts and declarations as to the validity of the debt in question, and upon which plaintiff relied and was induced to purchase the said debt, from now denying the truth of such declaration.

BROWN, ASSOCIATE JUSTICE.—Defendants in error sued the city of Tyler to recover upon seven notes, being numbers 2, 3, 4, 5, 6, 7 and 8

of a series of ten notes, each dated on the 20th day of August, 1897, payable to the Tyler National Bank or bearer at respectively one to ten years from date, according to the number of the note. Each of the notes bore 6 per cent interest, payable semiannually on the 20th days of February and August of each year until the maturity thereof, and was for the sum of $1700, aggregating $17,000. Coupons were attached representing each installment of interest which might become due to the time of maturity of the note. Each note contained the following paragraph: "This note is number Two and is one of a series of ten notes of like tenor and date numbered from one to ten respectively, all of which ten notes are issued in lieu of certain notes, warrants and city scrip issued by the city of Tyler in payment of current debts of said city, a list of which is embodied in an ordinance, passed by the city council of the city of Tyler, Texas, on the 20th day of August, 1897, and this note is authorized by said ordinance. If the city of Tyler should fail to pay as many as two of said coupons as they become due successively, that is, if any two of said coupons should remain unpaid at any one time, then this note shall, at the option of the holder, become due and payable, the maturity date, hereinbefore provided, to the contrary notwithstanding, and should this note be placed in the hands of an attorney for collection because of failure to pay same when due, then the city of Tyler agrees to pay all costs of collection including ten per cent on the principal and interest then due for collection fees."

From the conclusions of fact found by the Court of Civil Appeals we copy the following:

"The city of Tyler is a municipal corporation organized and acting under the general laws of the State. Said city did not at the time of the execution of the notes sued on, nor did it ever at any time, contain as many as ten thousand inhabitants. On April 28, 1887, the appellant city for a cash consideration of $12,500 sold its water works system to L. B. Fish and associates and granted to said vendees and their assigns the exclusive privilege of establishing and maintaining a system of waterworks for the purpose of supplying water to said city and its inhabitants. The ordinance authorizing this sale and granting this franchise provides for the extension and enlargement of the waterworks plant; regulates the manner in which the streets are to be used by the water company; reserves the right in the city to require additional extension; fixes the rate to be charged the city for rental of fire hydrants at $50 a year for each hydrant, payable in quarterly installments on the first day of February, May, August and November of each year, and agrees that the city shall rent such a number of fire hydrants to each mile of extension as the city council may designate for thirty years, and that it will pay legal interest on all sums that may become due the company if same are not paid at maturity. The Tyler Water Company became the assignee of the property and franchise granted to Fish, and on June 12, 1889, made a contract with the city which was approved by the city council to furnish 100 fire hydrants for the use of the city, to be

paid for under the terms of the ordinance granting the original franchise except that the payments accruing for the first year were not to be collected before December 31, 1890. This contract was to continue during the life of said franchise. The notes and warrants in extension of which the notes sued on were given are thus described in the ordinance authorizing the issuance of the new notes:"

Here follows a particular statement of the notes funded to the amount of $17,000.77.

"Several items of indebtedness evidenced by these notes and warrants are shown to have originated as follows: The six notes for $500 and the note for $560 were given in lieu and in extension of a note for $3000 executed by appellant in favor of Tyler Water Company in January, 1893, and payable on May 1, 1894, as shown by the following entry in the minutes of the city council:

" 'On motion the finance committee, mayor and secretary were authorized to take up and cancel a note for $3000 given Tyler Water Company in January, 1893, for one year's water, and due May 1, 1894, and issue therefor six notes of $500 each and one for interest at the rate of 8 per cent per annum.'

"These notes all bear date May 4, 1895, and are payable to the Tyler Water Company on or before May 4, 1896, with interest from date at the rate of 8 per cent per annum, and recite that they were authorized by an order of the city council entered of record May 3, 1895. No ordinance or resolution of the city council is shown authorizing the issuance of the $3000 note. The debt represented by the notes of $1299.60 and $585 respectively originated as follows: On January 8, 1894, the city issued to the Tyler Water Company four warrants for water furnished in 1893, numbered and in the following amounts:"

Here follows a description of four warrants aggregating $1884.60.

"The following is the only entry on the minute book covering these warrants: 'The bills and salaries were read and ordered paid.' This entry appears in the minute book of the first meeting of the city council in January, 1894.

"The two constituent notes substituted for these warrants were executed October 11, 1894, and payable October 11, 1895, with 6 per cent interest from date, and each recited that it was executed under an order of the city council passed on October 5, 1894. The minutes of the city council of date October 5, 1894, contain the following entry:

" 'H. H. Rowland came before the city council asking that the city give him a new note in lieu of one given January 1, 1893, for $2762.50 for water for 1892. On motion it was ordered that the note be renewed for one year, at 8 per cent interest, and ordered that the secretary issue 6 per cent notes for amounts held by the members of the water company in the settlement for 1893.'

"The notes No. 1360 for $500, No. 1316 for $500, and No. 1315 for $548.48, were given in lieu of the following warrants issued by the appellant." The detailed statement is omitted.

"The remaining indebtedness of $345.10, which went to make up the $1548.48 covered by these notes, was evidenced by warrants the origin and amounts of which are not shown. These notes were each executed March 10, 1894, and were payable to bearer on or before January 1, 1895, with 6 per cent interest from January 1, 1893, and each refers to the others and recites that it is one of a series of three notes given in satisfaction of an aggregate existing indebtedness of $1548.48 evidenced by scrip or warrants theretofore issued by the city of Tyler, the number of said warrants being set out in each note. No ordinance, resolution or order of the city council authorizing the execution of these notes is shown.

"The note for $3410.42 was executed October 11, 1894, and was given in substitution of a note for $2762.50 given by the city to the water company for water furnished in 1892. The minutes of the city council of date October 5, 1894, contain the following entry:

" 'H. H. Rowland came before the council asking that the city give him a new note in lieu of one given on January 1, 1893, for $2762.50 for water for 1892. On motion it was ordered that note be renewed for one year at 8 per cent interest, and ordered that the secretary issue 6 per cent notes for amounts held by the members of the water company in the settlement for 1893.'

"This note recites that its execution was authorized by order of the city council entered on October 5, 1894, and the amount for which it is executed was evidently obtained by adding 8 per cent interest to the $2762.50 from January 1, 1893, and upon the sum thus obtained adding an additional 8 per cent from the date of the note to October 11, 1895, the date of its maturity, as it only bears interest from maturity. The note for $1500 was executed July 1, 1894, and is payable to the Tyler Water Company or bearer, one day after date, and was given in settlement of amount due by the city for hydrant rental from January 1 to July 1, 1894. This note was authorized by an ordinance of the city council, which appears in the minute book, but is not shown to have been copied into the ordinance book. The minutes of the meeting of the city council at which this ordinance was passed are not signed by the mayor, and are not shown to have been approved at any subsequent meeting of the council. The two notes for $775 each were executed on the 7th day of April, 1894, and payable on the 7th day of April, 1895 and 1896, respectively, and were given in part payment of the purchase money for a tract of 101 acres of land purchased by the city for cemetery purposes. This land was sold to the city by C. L. Caspary and W. G. Human on December 10, 1888. The deed recites a consideration of $3300, for which amount the city issued five warrants for $680, payable on the 1st day of February, 1890, 1891, 1892, 1893 and 1894, respectively, with 8 per cent interest. These drafts were payable out of the cemetery fund. At the time these warrants were issued the city was maintaining a cemetery fund by the levy of a tax of .03 on the $100 valuation of property in the city. Caspary testified he would have taken

vendor's lien notes for the land, but was informed by the city council when he went to deliver the deed that the city did not want a lien retained on the land, as it desired to sell a portion of same and a lien would prevent such sale. He further testified that he was assured by the council that the cemetery fund would be maintained by special taxation, and he understood same would be sufficient to pay the warrants at maturity. These warrants were all paid except the last two, for which the notes above mentioned were substituted. These notes recite that their execution was authorized by an order of the city council entered of record on April 6, 1894, but no such order is shown on the minute book nor on the ordinance record. No provision was made for the payment of the warrants nor of the notes at the time they were executed. All of the remaining warrants mentioned in the ordinance authorizing the notes sued on are either shown to have been barred by limitation at the date of the ordinance or are not shown to have been issued for current debts of the city legally incurred, except the two items of $3 each, which were shown to have been for salary due R. T. Dorough as alderman and for which warrants were issued in February, 1894. (At the time of the execution of the notes sued on and at the time of the execution of the several notes and warrants before described, in satisfaction of which the notes sued on were executed, the appellant had exhausted its power to levy special taxes to provide for the payment of interest and the creation of a sinking fund to pay the indebtedness thereby created, the 25 cents on the $100 valuation of property within the city which it was authorized to levy having been previously levied to provide for the payment of outstanding bonds.)

"On December 10, 1894, the city council of appellant city passed a resolution directing the mayor to take the necessary steps to secure a special charter for the city at the next session of the Legislature, and to that end he was authorized to employ some suitable person to take the census of the city. In pursuance of this resolution the mayor appointed the city secretary, John M. Adams, census enumerator, and directed him to proceed to take a census of the inhabitants of the city. No report of such census is found in the records of the city and the minute book of the city council contains no further mention of same. Adams testified that he took a census of the city and made a written report to the council, which was adopted by resolution of the council, and that this report shows that the city had 10,119 inhabitants. He further testified that he filed a copy of this report in the office of the Comptroller, and attaches to his deposition a copy of the report so filed. He also attaches a copy of the resolution of the city council adopting his report, which he says he made at the time the resolutions were passed, and which is as follows:

" 'Whereas, John M. Adams who was heretofore authorized and directed to take the census of the city and to ascertain the number of inhabitants of this city, has made his report to the city council; and whereas, said report shows that on March 1, 1895, the city of Tyler contained.

10,119 inhabitants and over, the said report being duly verified and the council having heard the evidence to support the said report, finds the same true and correct, and finds that the city of Tyler has now over ten thousand inhabitants, therefore,

" 'Be it resolved by the city council of the city of Tyler, Texas, that said city of Tyler has over ten thousand inhabitants, and that said city do hereafter operate as a city of over ten thousand inhabitants.'

"He does not know what became of the original resolutions.

"In an ordinance passed by the city on September 26, 1896, providing for the issuance of $35,000 funding bonds, the city of Tyler is declared to be a city of over ten thousand inhabitants.

"Bonds were issued in pursuance of this ordinance for the purpose of compromising and funding the outstanding indebtedness of the city, including the original warrants and the notes evidencing the indebtedness claimed in this suit. The Tyler National Bank, in anticipation of the payment of said indebtedness out of the proceeds of the sale of said bonds, bought up said notes and warrants. The bonds issued as provided for in said ordinance were sold by the city, but before the notes and warrants were taken up the bank in which the money derived from the sale of the bonds was deposited failed, and a large portion of the money was lost, and the city was thereby rendered unable to pay said indebtedness.

"The appellee was the cashier of the Tyler National Bank and acted for it in the purchase of the notes and warrants. He knew of the issuance of the funding bonds and that the ordinance providing for their issuance recited that the city contained over ten thousand inhabitants and testified that before buying the notes and warrants he had an investigation made as to the financial condition of the city and satisfied himself that the papers were legal and had been passed upon by the Attorney-General and approved by him in his approval of the $35,000 funding bonds, and that if he had not been advised of the proceedings taken by the city council to issue the funding bonds he would not have purchased the paper.

"After the loss of the money realized from the sale of the funding bonds appellee, as cashier of the Tyler National Bank, went before the finance committee of the city council, which committee approved $17,000 of the notes and warrants held by said bank as valid claims against the city, and council thereafter passed the ordinance authorizing the issuance of the notes sued on.

"On the 31st of December, 1898, the Tyler National Bank went out of business and appellee became its successor and took its assets including the notes sued on.

"The first of the ten notes issued to the bank was paid by the city and the last two notes were sold by the bank prior to acquisition by appellee of the bank assets.

"The court below instructed the jury that the notes and warrants issued for hydrant rental were valid obligations at the time they were

merged into the notes sued on and that plaintiff was entitled to recover seven-tenths of the amount of same, being the sum of $9162.58 with 6 per cent interest thereon from January 20, 1899. The jury were further instructed to return a verdict for the defendant as to the two notes of $775 each executed for the purchase of the cemetery property. As to the remaining indebtedness set out in the ordinance authorizing the execution of the notes sued on, the question of its validity and the liability of appellant therefor was submitted to the jury."

The application presents twenty-one grounds of error which embody the following propositions:

1. That the obligations sued upon are bonds within the meaning of the laws of the State.

2. That the contract under which the constituent debts accrued was void, because it created a monopoly.

3. That the making of the several obligations sued upon created a debt within the meaning of the Constitution, and, no provision being made to pay the interest and sinking fund, they are void.

4. That the funded debts were for current expenses of the city for different years, and, there being no fund out of which they are entitled to be satisfied, the courts can not enforce them.

5. That no officer of the city could execute contracts for the city, except by authority of an ordinance, and the execution of the original notes was not so authorized and they are void.

6. That this suit was instituted upon the obligations issued by the city of Tyler on the 20th day of August, 1897, and not upon the debts for which they were given, therefore the Court of Civil Appeals erred in rendering judgment for the constituent debts.

7. That the constituent debts were barred by the statute of limitation.

Article 465 of the Revised Statutes confers power upon the city council: "To pass all necessary ordinances to provide for funding the whole or any part of the existing debt of the city, or of any future debt, by canceling the evidences thereof, and issuing to the holders or creditors notes, bonds or treasury warrants, with or without coupons, bearing interest at any annual rate not to exceed ten per cent." This statute authorizes the city council to issue either notes or bonds for the purpose of funding its outstanding indebtedness, and the council in this case, by its ordinance, directed that notes should be made and delivered in lieu of the said outstanding indebtedness; the obligations made in pursuance of that ordinance recited that they were notes. The obligations in suit have some of the characteristics of bonds, but they are more like promissory notes. It is evident that the parties to this transaction intended to issue notes, and having power to do so, their intention must be given effect. The instruments are not bonds within the meaning of the statutes regulating the issuing of bonds.

The obligations sued upon were executed by the city for the purpose of funding its outstanding indebtedness. Granting that the water con-

tract was void, as charged, nevertheless the city must be held liable for what it received under the contract. Brenham v. Water Co., 67 Texas, 566. The parties agreed on the value of the water furnished, so the right to recover does not depend upon that instrument. The execution of these notes did not increase the indebtedness of the city, because when they were delivered the old debts were taken up and extinguished, and the the new notes did not create a debt against the city, which required the levy of taxes to provide for the interest and sinking fund. Doon Township v. Cummins, 142 U. S., 372; City of Valparaiso v. Gardner, 97 Ind., 8; McNeal v. Waco, 89 Texas, 83; Corpus Christi v. Woessner, 58 Texas, 462. The character of the debt was the same after the new notes were given as before.

The Court of Civil Appeals found that the current expenses of the city of Tyler for the year 1889 exceeded its revenue, and plaintiff in error, under the thirteenth assignment in the application, makes a statement showing the revenue for 1889 was not sufficient to discharge the current expenses for that year; but under no one of the assignments does the plaintiff in error raise the question, that, for the years in which the water was used by the city of Tyler, the current expenses were greater than the current revenue. The making of a contract for water for a number of years, to be delivered in the future, did not create a debt against the city, but the liability of the city arose upon the use by it of the water during each year. Valparaiso v. Gardner, before cited. It is therefore immaterial that the current expenses for 1889 were greater than the curent revenue of the city of Tyler, and we shall not further discuss that phase of the question.

It appears from the findings of fact made by the Court of Civil Appeals, that the debts upon which recovery was allowed were contracted for the current expenses of the city of Tyler for the several years mentioned in the said statement, and the presumption will be indulged that the current revenue for each year was sufficient, if it had been collected and properly applied, to have liquidated the current expenses. McNeal v. Waco, before cited. It appears that the parties to the contract intended that the sum should be paid out of the current revenue for the year, and there is nothing to indicate that they did not act in good faith with reasonable ground to believe that the current revenue would be sufficient for that purpose. McNeal v. Waco, 89 Texas, 88. The water contract provided that the payments should be made quarterly during each year, and we see no reason to believe that the parties intended that it should be other than a contract payable during the year for which it was contracted. If it were held that a city could not make a binding contract, unless at the time it had revenue sufficient to discharge all of its current expenses, and that every person who should deal with it must do so at his peril, taking the chance of a deficit in revenue, it would be absolutely destructive of the power of every city in the State to carry on its ordinary governmental affairs, for it is well known that the business of a city is conducted upon the basis of credit and depends entirely upon

the collection of taxes from time to time with the claims for current expenses running over from one month to another. We believe that such a contract, though not paid off during the year for which it was made, remains a valid debt against the city, which it may and should discharge out of the revenues for future years in excess of its current expenses. Corpus Christi v. Woessner, before cited; article 465, before quoted. In the case of Corpus Christi v. Woessner, debts, contracted for several different years, not being paid, had gone over to succeeding years, and the city had diverted its fund from the payment of its debt to other purposes. In order to defeat the enforcement of the claims against the surplus of current revenue for subsequent years, the city passed an ordinance practically refusing to pay any claim which was contracted prior to a given date, including the claim sued upon, and our Supreme Court sustained a general judgment against the city. The terms of article 465, Revised Statutes, confer authority upon the city council, "to provide for funding the whole or any part of the existing debt of the city, or of any future debt," showing that it was contemplated by the Legislature that the indebtedness of cities might not be liquidated by the revenues for each year, but would accumulate against such corporations, and to enable them to fully liquidate their debts, the power was given to fund all such indebtedness. Article 466 of the Revised Statutes confers upon cities, organized under the general laws, authority "to appropriate so much of the revenues of the city, emanating from whatever source, for the purpose of retiring and discharging the accrued indebtedness of the city." This is direct and positive authority for the city to use its revenues both from its ordinary sources of taxation and any other source of income that it might have for the purpose of liquidating and discharging accrued indebtedness, which must mean debts of previous years and not of the current year, hence it can not be that current expenses not paid each year become void. The Court of Civil Appeals did not err in holding that the debts contracted for the current expenses, lawful at the time that they were contracted, continued to be lawful after the expiration of the year for which they were made and afforded sufficient basis for rendering judgment against the city which might be enforced if it should become possessed of property or funds subject to the payment of such debts.

There is no provision of law which requires a city to enact an ordinance to enable its officers to execute contracts for current charges of the administration of its affairs. The Court of Civil Appeals excluded all debts for which authority was not found in the minutes of the council, which was the proper test to be applied.

This suit was based upon the notes executed by the city with the alternative prayer, that in case recovery could not be had upon the notes, then the plaintiff might recover upon the constituent indebtedness, but the Court of Civil Appeals entered judgment upon the notes executed under the ordinance of the 20th day of August, 1897, and not upon the debts for which those notes were given. The court entered into an examination of the consideration upon which the notes sued on were issued and deter-

mined that a number of the claims which were embraced were illegal, giving to the defendant a credit for all such claims as were barred by limitation or improperly embraced for any other reason. The court properly computed limitation upon the original debts up to August 20, 1897, when they were funded.

We find no error in the judgment of the Court of Civil Appeals, which is affirmed.

*Affirmed.*