## SHELBY COUNTY v. CALDWELL.
### No. 1945.

Court of Civil Appeals of Texas. Beaumont.
March 31, 1932.

J. M. Sanders, of Center, for appellant.

Sanders & McLeroy, of Center, for appellee.

I. W. LAWHON, Special Associate Justice.

Appellee brought this suit against appellant in the district court of Shelby county on a number of warrants or claims alleged to be due for labor and material furnished in repairing and improving public roads and buildings, and repairing bridges and culverts on such roads, in Shelby county.

It appears that all of the warrants were issued for road improvements in precinct No. 2, of which precinct L. S. Creech was county commissioner. The evidence discloses that during the year 1928, when all of these war-

rants were issued, there were many heavy rains and storms, which washed out bridges and culverts and rendered the roads impassable, and that the work was necessary in order to allow the mail to be delivered and school busses to operate.

Commissioner Creech employed a number of people to do the necessary work in repairing the roads and bridges, and, when the work was completed, he would issue a statement or warrant, one of which reads as follows:

"Center, Texas, Feb. 13, 1928.

"Name of Creditor: Tommie Gilliam

"Address: Choice, Texas.

"In Account With Shelby County, Texas.

"Date entered or made: Feb. 13, 1928, for road work, to come out of the Road & Bridge Special.

"Amount $100.00.

"O. K.　J. J. Oliver, Commissioner Beat

"O. K.　L. S. Creech, Commissioner Pct. 2.

"O. K.　E. F. Ross, Comn'r. Beat No. 3."

The others were substantially the same, except that all of them were not approved by three commissioners, but in most instances they were approved by J. J. Oliver, commissioner of precinct No. 1 and L. S. Creech, commissioner of precinct No. 2.

Two of these warrants were issued to appellee E. H. Caldwell and the other warrants were issued to other parties, who assigned them to Caldwell. The amount of these warrants aggregated $1,134.45, and appellee brought suit on all of them. He alleged due assignment in due course of trade of these warrants, and alleged that they were issued by the commissioners' court, and that the court had refused and neglected to pay the same. It was further alleged in plaintiff's petition that, if he was not entitled to recover on the written memoranda or warrants, the parties to whom they were issued had performed services and labor for the county, which was necessary for the maintenance of the public roads and highways of the county, and that the amounts named represented the fair and reasonable market value of the labor and services done and performed, and that, the county having received and retained the benefits of such labor and services, he was entitled to recover the value of the same on a quantum meruit.

The defendant, Shelby county, filed a general demurrer and two special exceptions, and by special answer among other things alleged that the instruments sued upon were nonnegotiable, and that plaintiff had no authority to sue, and that the suit should be abated, and further that, by reason of the instruments being nonnegotiable, the court had no jurisdiction. It was further alleged that the commissioners' court had never ordered the work done and had never audited the claims or authorized the payment.

In its answer appellant alleged that, by reason of the Special Act of the Thirty-Ninth Legislature (Sp. Acts 1925, c. 174) amending the Special Road Law of Shelby county, Tex. (Sp. & Loc. Acts 1913, c. 2), the commissioners' court was without authority to issue warrants or scrip when there was no money in the road and bridge fund with which to pay the same, and that warrants so issued should be void, and that there were no funds with which to pay such warrants at the time they were issued.

On trial before the court, all exceptions were overruled, and the court gave judgment against the county for the sum of $1,134.45, being the face value of the warrants, with interest thereon at the rate of 6 per cent. per annum from date of judgment. The judgment recites that the sum of $1,134.45 represented the fair and reasonable value and compensation for labor and work performed and material furnished by the plaintiff and his assignors; thereby apparently basing the judgment upon a quantum meruit and not upon contracts.

Appellant has filed numerous assignments of error and propositions thereunder, and we shall discuss those that have material bearing upon a proper disposition of the case.

■ The first proposition asserts that a general demurrer should have been sustained, because the case was based upon an account for labor performed and material furnished, but that the accounts sued upon were not itemized. We are of the opinion that a general demurrer would not reach this objection to the petition.

The warrants or statements were not itemized, but the petition alleged that this amount represented labor and material furnished for the roads, and that the amount stated was the fair and reasonable market value of such labor and material. We believe that stated a cause of action as against a general demurrer.

Appellant cites the cases of Hickman v. Scudder-Gale Grocer Co. (Tex. Civ. App.) 62 S. W. 1081; Wall & Carr v. J. M. Radford Grocery Co. (Tex. Civ. App.) 176 S. W. 785; and Carpenter v. Historical Publishing Co. (Tex. Civ. App.) 24 S. W. 685.

In the cases of Hickman v. Scudder-Gale Grocer Co., and Wall & Carr et al. v. J. M. Radford Grocery Co., suits were based upon open accounts, verified according to article 3736 of the Revised Statutes of 1925. In construing this article of the statutes, the courts held that, unless the accounts were itemized, the affidavit would not be prima facie evidence of the correctness of the accounts. To the same effect is the case of Carpenter v. Historical Publishing Company, except that it was held that the account was properly itemized. These decisions follow a long line of decisions construing this statute. This ar-

ticle was amended in 1931, wherein a wider range of subjects was permitted to be proved by verification. This statute and the decisions cited by appellant have no application to this case. Suit was not on an open account, and no attempt was made to prove the correctness of the indebtedness by ex parte affidavits, but witnesses were introduced on the trial to establish that the indebtedness was just.

Appellant in its second proposition asserts that, as this suit was upon nonnegotiable instruments, plaintiff must allege an assignment of all equities of the original payees, and without such allegations the petition states no cause of action. This proposition is stated to be germane to the first assignment of error, and this assignment complains of the action of the court in overruling defendant's general demurrer. Substantially the same question is raised under the fifth, sixth, and fifteenth propositions.

██ We understand that appellant is contending that the assignments of the warrants from other parties were not sufficient to authorize appellee to sue and recover upon a quantum meruit. It is the contention, as we understand it, that, the warrants having been assigned to Caldwell, if he could not recover on the warrants, he had no right of recovery. The evidence shows that in most instances these warrants were indorsed by the holder writing his name on the back and delivering them to the appellee, Caldwell, but it is also shown by the testimony that the holders of these warrants had not been able to collect them, and that, when they were assigned to appellee, Caldwell, it was contemplated that he would bring suit thereon. It would appear from the testimony that there was a concert of action among the holders of these warrants to get them into the hands of appellee for the purpose of bringing suit against the county. There was some question raised as to whether appellee was a bona fide holder and owner of all of them, but we believe the evidence is ample to sustain the finding of the trial court that these warrants had been duly and properly transferred and assigned to appellee, E. H. Caldwell. Assignments of such instruments may be made by parol. Standifer v. Bond Hardware Co. (Tex. Civ. App.) 94 S. W. 144; Fielder Lumber Co. v. Smith (Tex. Civ. App.) 151 S. W. 605.

██ It was testified that some of the instruments were not indorsed, but were handed to appellee, and that the facts were discussed with him. We think under the evidence appellee was owner of the evidences of indebtedness and was authorized to sue both on the written instruments and for the reasonable value of the services and material represented by the certificates.

Appellant contends that, inasmuch as plaintiff did not allege that the roads upon which the improvements were made were not highways under the control of the Texas highway commission, a general demurrer should have been sustained.

Article 6673, Revised Statutes, provides that the state highway commission is authorized to take over and maintain various state highways in Texas, and that the maintenance of such highways shall be free of any cost to the counties through which they pass.

██ Article 6674b (Vernon's Ann. Civ. St.) provides that all highways included in the plan prepared by the state highway engineer shall constitute the state highway system. All the rest of the public roads of the state are left under the control of the counties or their subdivisions. It is our opinion that, if the roads improved in this case were state highways, it was the duty of the county to allege and prove these facts as a defense to plaintiff's suit.

Complaint is made that there is no evidence of the presentation of the claims to the court for allowance, and that the court had neglected to audit and allow the same, or any part thereof. J. J. Oliver, commissioner of precinct No. 1 of Shelby county, testified: "These are obligations incurred by Mr. Creech and passed by the Court in his precinct for work."

The evidence discloses that all of these warrants were in the hands of the county, and that the county judge put serial numbers on the backs of them. The testimony shows that the warrants were considered by the county judge and one or more of the commissioners after the close of Commissioner Creech's term of office.

Commissioner Creech, who authorized the expenditures, testified: "All these matters have been presented before our Court." The record is clear that the commissioners' court had knowledge of these transactions, and that these warrants were held by the court for a long period of time after the indebtedness had accrued.

██ Article 1573 of the statute does not require the rejection of a claim before suit can be filed. It provides that, after the claims have been presented and the court "shall have neglected or refused to audit and allow the same, or any part thereof," suit may be brought thereon.

██ When the court has had a reasonable time to consider the claims and has not acted, the holder of the claim is authorized to sue because the court has "neglected to allow the claim." Williams v. Bowie County, 58 Tex. Civ. App. 116, 123 S. W. 199.

The evidence amply established that the claims had been presented to and were in possession of the court for a reasonable time for the court to have acted upon them before suit was brought. It was also shown that

one commissioner, Swanzy, had told appellee that the claims were not going to be paid.

The appellant asserts with considerable force that the indebtedness sued upon was not authorized by the commissioners' court, that it was only authorized by one commissioner and informally approved by some other commissioner; that some of the accounts were in excess of $50, and that no bids were taken; and that therefore there could be no recovery. We have heretofore shown that these accounts were within the knowledge of the members of the commissioners' court, and that, when the work was actually performed, a majority, if not all, of the commissioners and the county judge knew the work was being done, and the expenditures were made with the approval of a majority of the members of the court.

■ Commissioner Creech undoubtedly had the power to contract for road work to an amount up to $50, and, of course, the commissioners' court had a right to contract for road work, regardless of the amount. Vernon's Ann. Civ. St. art. 752 (u), Acts of the 39th Leg. (1926) First Called Sess., p. 23, c. 16, § 23.

■ It is therefore clear that the commissioners' court of Shelby county had the right to authorize the expenditure of money for road improvements such as are involved in this suit. We do not find that the court ever took any formal action with reference to these transactions, and it appears that the trial court based its judgment upon the fact that the expenditures and improvements were made with the knowledge of the court, and that the county has received and retained the benefits, and was estopped to deny liability therefor. The evidence is uncontradicted that the amounts charged were reasonable and that the county received the benefits. There is no question that an imperative necessity existed for the work. It is shown that the mail could not be delivered on account of the condition of the roads and that children could not be transported to school.

We think that under an unbroken line of decisions Shelby county is liable for these obligations. Sluder v. City of San Antonio (Tex. Com. App.) 2 S.W.(2d) 841, is in point. In that case the mayor of the city of San Antonio employed J. T. Sluder to perform certain legal services. It was shown by the charter of the city of San Antonio that the only way the city was authorized to contract was by resolution or ordinance of the board of commissioners, and it was also provided by the charter that any debt contracted by any person on account of the city, unless it had been previously authorized by ordinance, should be absolutely null and void and uncollectible. The Commission of Appeals, through Judge Leddy, after reviewing many decisions, held that, notwithstanding these charter provisions, the city having received the benefit of Judge Sluder's services, it would be required to pay the reasonable value therefor.

Judge Leddy refers to the case of Mineralized Rubber Co. v. City of Cleburne, 22 Tex. Civ. App. 621, 56 S. W. 220. In that case a contract had been made for fire hose without at the same time making provision for levying and collecting a sufficient tax to pay the interest and provide a sinking fund for the debt, as provided by the Constitution of the state of Texas. The rubber company was allowed to recover the fire hose, and also to recover for the value of its use, and for the freight paid thereon. In the Sluder Case it was stated that, if the city had been unable to return the hose, it would have been proper to have entered judgment for its reasonable value.

■ Some contention has been made in this case that no provision had been made for the levying of a tax to provide for these warrants, and for that reason they were unenforceable. The evidence shows that this indebtedness was to be paid out of a special road tax, and that this road tax was levied and collected for 1928, the year this indebtedness accrued. It was shown that $8,000 accruing from this special road tax for the year 1928 came into the hands of the county treasurer while these warrants were in hands of the commissioners' court, but, instead of paying these warrants, the court bought a caterpillar tractor and a road grader. But, even if no tax had been levied, under the cases above referred to, the county would have been liable for the indebtedness.

In the case of Boydston v. Rockwall County, 86 Tex. 234, 24 S. W. 272, it was held that the contract made in the name of the commissioners' court by a person not authorized could be afterwards ratified by the court. The court went further, and held that, when the contract came to the knowledge of the commissioners' court, and they elected to hold the bonds which the county judge had bought without authority, or take any benefit under same, or to carry out its provisions, a ratification was shown.

In the Sluder Case it appeared that the services of Judge Sluder were rendered with the knowledge, consent, and acquiescence of a majority of the members of the board of city commissioners, and that constituted ratification of the act of the mayor in employing him in violation of the city charter. These cases are sufficient, although there are many others, including Galveston County v. Gresham (Tex. Civ. App.) 220 S. W. 560 (in which case writ of error was denied), and Gussett v. Nueces County (Tex. Com. App.) 235 S. W. 857.

The holding that appellant is liable because it received and retained the benefits of the

road improvements in our opinion disposes of the other questions raised by appellant.

The judgment of the trial court is therefore affirmed.