**CITY OF CORPUS CHRISTI v. JOHNSON.**

No. 8913.

Court of Civil Appeals of Texas. San Antonio.

Nov. 16, 1932.

Rehearing Denied Dec. 14, 1932.

866

James M. Taylor, John S. McCampbell, and Kleberg & Eckhardt, all of Corpus Christi, for appellant.

Morris, Sewell, Taylor & Garwood, of Houston, and Sidney P. Chandler, of Corpus Christi, for appellee.

SMITH, J.

Late in the year 1928 the governing board of the city of Corpus Christi projected a program for the widening and paving of Chaparral street in that city. The ordinance through which the program was initiated is not in the record, could not be produced upon the trial, but its passage, on December 7, 1928, and its general purpose, were disclosed in references thereto and the repeal thereof in a subsequent ordinance upon the same subject.

The program of improvements was developed through various actions by the city council, such as the transfer and appropriation of funds to the specific project, the adoption of plans, estimates, and specifications proposed by the city engineer, and of formal resolution ordering the specific improvement in detail.

Mrs. Annie U. Johnson, appellee herein, owned a lot and a business house thereon on Chaparral street, within the zone of the contemplated improvements, and in pursuance of the municipal program the city engineer wrote her as follows, on March 4, 1929:

"The City Council of the City of Corpus Christi has adopted a plan for widening Chaparral Street, cost of the work to be pro-rated between the City and the property owners on a basis whereby the property owners from Starr Street to Mann Street will pay $20.00 a front foot as an assessment for paying for the work. They will receive in return stipulated amounts to be agreed upon between the City and each owner in consideration that the owner deed to the City, land for the right-of-way, and for alteration of buildings where such may occur.

"You own lot twelve, block six, Beach Portion of the City of Corpus Christi, and your building projects beyond the new property line, fifteen feet to the South line and 13.86 feet at the North line. You will be asked to give the City a deed for this strip for which you will be paid $4,827.00, and for cutting off your building you will be paid $3,000.00 at the time the work is completed and accepted by the City Council.

"I am sending you two copies of this letter. If you will signify your acceptance on the bottom of one of these copies, I will have the City Attorney draw up the necessary contract and deed, so that all parties will be protected."

As directed, appellee indorsed and signed her acceptance on one of the copies of the letter and returned it to the city engineer, in the following language: "I accept the terms of the above, and you may proceed with the preparation of the papers for my signature."

The matter directly involved in this appeal is the proposition that the city pay appellee $4,827 for the land to be actually taken and $3,000 as compensation to her for the destruction or removal of her improvements then on the premises; the two items aggregating $7,827. The jury found upon sufficient evidence that the city proceeded to take the strip mentioned in the engineer's proposal, required appellee to remove her building therefrom, and set her property line back accordingly. In short, the engineer made an offer, purportedly in behalf of the city, appellee accepted the offer and fully performed thereunder, and the city governing board, with full knowledge, accepted and appropriated to the public use all the contemplated benefits derivable from the project.

It should be added that, upon the assurance of the mayor and commissioners and other city officials that the city would promptly perform the obligations sought to be imposed upon it in the engineer's offer to her, appellee at large expense removed her building from the land sought by the City, purchased adjacent property at a cost of $15,000, and rebuilt her business house upon reformed property lines made necessary by the city's demand.

It is not contended by appellee that the offer made to her was specifically authorized by prior resolution or ordinance of the city council, or that the agreement embraced in the letter and acceptance was by such means specifically authorized or approved by that body.

But appellee contends that the offer was made, accepted, and at great expense fully performed on her part with the full knowledge, consent, and approval of the mayor and council, who thereafter formally ratified the contract and appropriated to the public use all the benefits thereof, and that therefore the city is estopped to deny the validity of the contract. We conclude that appellee's contention is supported by the record and must be sustained.

Appellant vigorously contends that the city engineer's proposal and appellee's acceptance thereof are ineffectual to constitute a contract by or in behalf of the city. It is urged that it was not a definite agree-

ment, but merely a preliminary negotiation; that the minds of the parties did not meet therein; that it was so incomplete and informal that it could not be given the quality of a contract by subsequent ratification and confirmation by the city and never was in fact so ratified or confirmed; that it was invalid because it was never authorized, by ordinance or resolution or motion of the city council, to be made or executed, or signed by the mayor.

■ It is true as a matter of course that the city engineer had no power, at least in the absence of express authority by ordinance, which is not claimed here, to bind the city by his words or writing. And it is equally true as a matter of course that the city could have ignored or repudiated any agreement made by the engineer, and none could have complained thereat.

■■ But certainly the city had the power to widen and pave its streets and appropriate municipal funds therefor. Certainly it had the power to make this very contract, and, had it done so in the formal manner required by its charter, then such contract could have been specifically enforced against it.

So, having the power to make such contract, it could ratify and confirm it when made by any of its officials for it.

And, when it recognizes such agreement, adopts it as its own, exacts performance thereof from the contractee, and accepts all the benefits accruing to it therefrom, then it must in turn perform the obligations imposed upon it therein. That is all there is to this case. 10 R. C. L. p. 1075, § 360; City of San Antonio v. French, 80 Tex. 575, 16 S. W. 440, 26 Am. St. Rep. 763; Sluder v. City of San Antonio (Tex. Com. App.) 2 S.W.(2d) 841; Boydston v. Rockwall County, 86 Tex. 234, 24 S. W. 272; City of Tyler v. L. L. Jester & Co., 97 Tex. 344, 78 S. W. 1058; Shelby County v. Caldwell (Tex. Civ. App.) 48 S.W.(2d) 761; Gallup v. Liberty County, 57 Tex. Civ. App. 175, 122 S. W. 291; McKenzie Construction Co. v. City of San Antonio (Tex. Civ. App.) 50 S.W.(2d) 349; City of Texarkana v. Keeney (Tex. Civ. App.) 50 S.W.(2d) 339; Dozier v. City of Gatesville (Tex. Civ. App.) 51 S.W.(2d) 1091; Horne Zoological Arena Co. v. City of Dallas (Tex. Civ. App.) 45 S.W.(2d) 714.

■ It is probable that appellee's right of recovery may be as upon an implied, as distinguished from an express, contract, in which case her damages would be restricted to the market value of the property taken or destroyed, as of the time of such taking or destruction. In this case, however, the jury's finding of such market value coincided with the amount fixed in the contract, and judgment was rendered accordingly. That judgment will be affirmed.

■ The contract in question embraced an agreement that appellee would contribute $20 per front foot towards the paving, by the city, of the street in front of her property. But it appears that the city has never paved the strip contemplated in the engineer's proposal, and the matter is therefore not one to be adjudicated in this suit.

The judgment is affirmed.