HEUERMANN et al. v. CHURCH et al.

(Court of Civil Appeals of Texas.   San Antonio.   June 26, 1912.   Rehearing Denied Oct. 16, 1912.)

1. INJUNCTION (§ 12*)—OBJECTIONS—INJUNCTION USELESS.

A temporary injunction will not issue to restrain city officers from paying interest warrants after they have paid the same.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 12; Dec. Dig. § 12.*]

2. MUNICIPAL CORPORATIONS (§ 901*)—WARRANTS—INTEREST.

While under San Antonio City Charter, §§ 19, 51, and under the general powers conferred under article 100, the city could make any arrangements for protecting its credit which did not contravene sections 112, 115, providing that city warrants should not bear interest, the city could not enter into a valid contract to pay interest, until such time as there should be funds to meet them, on warrants to be purchased by a bank.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1886; Dec. Dig. § 901.*]

3. MUNICIPAL CORPORATIONS (§ 901*)—WARRANTS—INTEREST.

Where the city's charter expressly prohibited any payment of interest on warrants, the doctrine that one is liable for the reasonable value of service rendered could not be invoked to entitle a bank to interest on city warrants pursuant to an arrangement entered by it with the city to protect the city's credit by advancing the money to pay warrants pending the city's receipt of funds from tax collections.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1886; Dec. Dig. § 901.*]

Appeal from District Court, Bexar County; Arthur W. Seeligson, Judge.

Petition by Louis Heuermann and others against F. W. Church and others. From a judgment refusing a temporary injunction, plaintiffs appeal. Sustained in part, reversed and rendered in part.

Robt. G. Harris and Geo. C. Altgelt, both of San Antonio, for appellants. Ryan & Ryan and Denman, Franklin & McGown, all of San Antonio, for appellees.

───────────────

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

JAMES, C. J. This is an appeal from the refusal of a temporary injunction. The petition was filed by Louis Heuermann and others, as taxpayers on property within the city of San Antonio, against F. W. Church, city treasurer, and against the mayor and city clerk, and against D. Sullivan & Co., alleging, among other things: That the mayor and city clerk had issued to the banking firm of D. Sullivan & Co. city warrants, as follows:

November 1st., 1911, No. 851, purporting to be for interest on overdrafts for July, August and September, 1911...... $ 918 61

December 5th., 1911, No. 959, purporting to be for interest on overdrafts for month of October, 1911.................. 1,014 38

January 13th., 1912, No. 2911, purporting to be for interest on overdrafts for month of December, 1911............... 1,383 03

February 6th., 1912, No. 3123, purporting to be for interest on overdrafts for month of January, 1912.................. 1,862 83

March 7th., 1912, No. 3332, purporting to be for interest on General Fund overdrafts for month of February, 1912.. 1,990 02

April 16th., 1912, No. 3644, purporting to be for interest on overdrafts for month of March, 1912..................... 2,423 39

Aggregating ............................. $10,550 23

That said warrants are still in the hands and possession of D. Sullivan & Co., and have not been paid by the city treasurer, because said treasurer has no funds in his possession from which same may be properly paid. That the taxes for the fiscal year ending May 31, 1912, are now due and being paid, and said treasurer threatens and intends to pay said warrants, which warrants petitioners claim are void, being drawn without lawful authority. In addition to asking injunction against Church, the treasurer, restraining him from paying any of said interest warrants, petitioners prayed that the mayor and city clerk be restrained from issuing to D. Sullivan & Co. any further warrants in payment of interest upon the "pretended loan aforesaid," meaning by this, as we understand it, the unpaid city warrants. This last-named prayer was based upon the allegation that they "will continue to issue monthly warrants in favor of defendants, D. Sullivan & Co., purporting to be for interest on pretended overdrafts and defendant Church will pay same when in funds." The petition further prayed that all of said warrants and pretended contracts be held for naught and canceled by decree, and that the injunctions be perpetuated on final hearing. The temporary injunction was refused in toto by the district judge.

[1] We are of opinion that the injunction was correctly denied as to the interest warrants that were issued as the same are set forth in the petition, for the reason that the evidence shows they had already been paid. An injunction will not issue to stay an act which has already been done.

[2] The question then arises as to petitioners' right to have restrained the issuance of further warrants representing subsequent interest on said warrants or "overdrafts." The facts are that the fiscal year of this city begins on June 1st and ends May 31st of the following year. The taxes for the fiscal year are not due and payable until April 1st, so that from May 31st to April 1st or thereafter the city's fund for general purposes of that fiscal year is not sufficient for it to maintain itself on a cash basis and thereby promptly pay its warrants.

Mr. Sullivan testified to a contract or arrangement with the city on this subject, and in view of this situation as follows: "We pay warrants and carry them as overdrafts. * * * We buy the warrants with money at par or face value, then we charge the city 6 per cent. interest on them at the end of every month. * * * The city has an overdraft at our bank with old warrants that are unpaid. I don't remember how much. * * * I suppose it is over $100,-000. I surely will charge interest on that overdraft for May. This is last month. That is my right under the contract. * * * I have a contract, and they keep their contract. I intend to charge interest on what they owe me by agreement according to my contract. I made the contract with the city; that is, with the city council and mayor. * * * If the city owes us an overdraft say for April of $50,000 in the shape of warrants purchased, the city has to pay us 6 per cent. interest on the overdraft or amount of money we advanced in taking up these warrants. On the 30th day of April, we will say, we make the calculation and charge up to the city what should be the amount of the overdrafts. Suppose for example the city owed us $50,000, we charge 6 per cent. interest for the month of April and charge up one-twelfth of that amount. * * * I get the full interest each month. In my answer in this case I say any arrangement had with D. Sullivan & Co. for financing the city expired on May 31, 1912, and therefore they will not continue to issue monthly warrants by reason thereof for interest on overdrafts under said arrangement complained of in plaintiffs' petition. * * * No warrants have been presented to me for May expenses yet. * * * I cannot tell when the warrants are issued for the May salaries whether there will be money sufficient to meet them or not. * * * We buy warrants and charge them up and claim interest on these warrants." The evidence shows that the city treasurer kept all the city's funds in the bank of D. Sullivan & Co.

It is evident from the testimony taken in the hearing that there was an arrangement with the city by which D. Sullivan & Co. were to take the city warrants when presented at the bank and pay the holders the par value thereof in cash, and, if the city treasurer did not have money of the general fund to his credit in the bank with which to

satisfy the warrants, they would be held by the bank until funds came in; and for such time as the bank so held the warrants the city was to pay interest on them at the rate of 6 per cent. per annum. The interest warrants set forth in the petition—the last one being for interest on such warrants (or overdrafts so called) for the month of March—were drawn in conformity with such arrangement. As these issued warrants for interest were paid prior to this suit, an injunction to prevent their payment was, as before stated, properly refused. It appears, also, from the testimony that the said warrants, or overdrafts, were in whole or in part still unpaid in D. Sullivan & Co.'s hands, and, according to said arrangement, were still drawing interest, and that Mr. Sullivan expected and would demand payment from the city of interest up to May 31, 1912, the date the arrangement or contract would expire. It is true that it appears that up to the date of the hearing interest warrants had not been issued to D. Sullivan & Co. for the month of May, but they could be issued at any time, and, if issued and paid, the petitioners' relief as asked for on final hearing would be prejudiced. A part of the relief prayed for by the temporary order was to restrain the city's officers charged with the duty of issuing warrants from issuing any further warrants for interest on said overdrafts for the period ending May 31, 1912.

The city's charter (section 112), provides for the issuance of warrants on the city treasurer to creditors of the city, expressly stating, however: "And such warrants shall not bear interest." Section 115 reads: "City warrants shall not bear interest and shall not be receivable for taxes," etc. These provisions amount, we think, to an express direction against the payment by the city of interest on warrants issued by it. The one to whom a warrant was issued could certainly not demand interest on it for the time he was required to hold it for funds to come into the treasury to meet it, and for equal reason his assignee would have no better right, and that is precisely the position occupied by D. Sullivan & Co. with reference to the warrants acquired by them. But it is contended that the city had power to make the arrangement or contract with D. Sullivan & Co. by virtue of sections of the charter which give the council the care, management, and control of the city and its finances, and because there being no money available in the general fund to pay current expenses of the city for the fiscal year 1911–1912 until taxes came in between April 1 and May 31, 1912, and warrants for salaries, etc.,

must, under sections 111 and 52, be issued monthly, and under section 112 whenever other claims are audited and established, and therefore from June 1, 1911, to at least April 1, 1912, there would be no money available to take up such warrants, the city council, under the authority of sections 19 and 51 giving it control of the city and its finances as well as its general powers under article 100, "has the right to protect the city's credit as well as its creditors, and avoid the hawking about the streets and the discounting of its warrants by loan sharks and usurers, by arranging with a bank or trust company to take up warrants at par and hold them until the city is in funds." We think the city could do this by any arrangement that did not contravene the provisions of the charter concerning payment of interest on the warrants. The city was without power to contract with any holder of its warrants for interest thereon. The sections of the charter above quoted were in effect a prohibition against payment of interest. With such provisions in the charter the city could not make a valid contract to pay interest either upon the face of the warrants or separately, with any holder of the same. Under the testimony in this record, petitioners were entitled to enjoin the payment by the city of unpaid interest on the warrants held by D. Sullivan & Co. for the period of their contract for such interest, not covered by the interest warrants that were issued and shown to have been already paid.

The case of City of Tyler v. Jester, 97 Tex. 344, 78 S. W. 1058, cited by appellee in support of the right and power of the city to make such contract, is no authority for the position, nor the citations to Dillon on Corporations, in view of the charter provisions in this charter as to interest above quoted.

[3] Another position taken by appellee is that D. Sullivan & Co. having in good faith advanced these moneys to protect the city's credit, and the city, having knowingly received the benefit of his money, is liable to pay the reasonable value of such service. This doctrine cannot be invoked on the face of the charter prohibition against payment of interest on the warrants. Any person entering into a contract or arrangement of this nature must be held to have known the limitations on the city's power.

The judgment, in so far as it denies injunction as to the warrants that had been paid, is sustained. The judgment will be reversed as to future interest warrants, and judgment here rendered awarding plaintiffs a temporary injunction as to the drawing of future warrants for interest, as prayed for.