CITY OF SAN ANTONIO v. ALAMO NAT. BANK.

(Court of Civil Appeals of Texas. San Antonio. March 12, 1913. On Motion for Rehearing, April 10, 1913.)

1. JUDGMENT (§ 744*)—RES JUDICATA—QUESTIONS CONCLUDED.
A decision of the court on appeal affirming a judgment for plaintiff suing a city on warrants for current expenses of a fiscal year, that the judgment bears interest, is conclusive on the parties in a subsequent action by plaintiff for mandamus to compel the city to pay the judgment and to levy a tax therefor.
[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1278–1281; Dec. Dig. § 744.*]

2. INTEREST (§ 22*) — JUDGMENT ON WARRANTS.
Under Rev. Civ. St. 1911, art. 4981, providing that all judgments shall bear interest, a judgment against a city for a sum due on city warrants for current expenses of a fiscal year bears interest when payment may only be exacted out of funds then applicable, or which may thereafter become applicable, to the payment of the warrants in numerical order, though the charter of the city specifically provides that warrants shall not bear interest.
[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 43–53; Dec. Dig. § 22.*]

3. APPEAL AND ERROR (§ 742*) — ASSIGNMENTS OF ERROR—STATEMENTS—NECESSITY.
Assignments of error not followed by statements will not be considered on appeal.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

4. MANDAMUS (§ 176*)—PETITION—RELIEF.
Where plaintiff in mandamus to compel a city to pay a judgment prayed that the city be required to pay the judgment and interest and for general relief, the court could direct the payment of the costs incurred in the action resulting in the judgment, though the petition did not specifically mention the costs.
[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 392–394; Dec. Dig. § 176.*]

5. INTEREST (§ 50*)—TENDER—SUFFICIENCY.
Where a judgment against a city on city warrants drew interest, a tender by the city on condition that no interest could be exacted was insufficient to relieve it from liability for interest.
[Ed. Note.—For other cases, see Interest, Cent. Dig. § 114; Dec. Dig. § 50.*]

6. MANDAMUS (§ 178*)—JUDGMENT—REQUISITES.
Where city warrants for current expenses were extinguished by a judgment against the city thereon, a judgment in mandamus ordering payment of the judgment and the levy of a tax therefor need not provide for the cancellation of the warrants.
[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 396–400, 410; Dec. Dig. § 178.*]

On Motion for Rehearing.

7. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR.
Where an assignment of error embraces two distinct propositions and the propositions are not germane to the assignment, the assignment will not be considered.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

Appeal from District Court, Bexar County.
Action by the Alamo National Bank against the City of San Antonio. From a judgment for plaintiff, defendant appeals. Affirmed.

Joseph Ryan, of San Antonio, for appellant. Clinton G. Brown and Wm. Aubrey, both of San Antonio, for appellee.

MOURSUND, J. On March 19, 1908, the Alamo National Bank recovered judgment against the city of San Antonio for $8,644.11 on warrants owned by the bank and issued by the city for salaries and wages, and enjoining the city from diverting the general fund of the city for the fiscal year 1903–04, against which said warrants were drawn, so far as that fund was at that time or might thereafter become applicable to the payment of said warrants. Upon appeal by the city the judgment was affirmed by this court by an opinion reported in 52 Tex. Civ. App. 561, 114 S. W. 910. Writ of error was denied by the Supreme Court. This suit was brought in 1911, praying for mandamus requiring the city to pay said judgment and interest out of money then in, and that thereafter might come into, the 1903–04 general fund, also that, if payment cannot be made out of said fund, the city and its officials and their successors be required to levy a tax to pay the judgment, and on May 27, 1912, the trial court rendered judgment requiring the defendant to apply to the payment of such judgment funds of said fiscal year, so far as the same were applicable thereto, and to levy a tax for the discharge of said judgment in whole or in part. The court filed findings of fact and conclusions of law, the findings covering in detail the pleadings in the former suit, the ordinances relating to the matter, and descriptions of the warrants, all of which matters render some of the findings so lengthy as to make it inadvisable to copy them in this opinion, so we will merely state the substance of some, and others we will copy in making findings of fact.

Findings of Fact.

First. On March 19, 1908, judgment was rendered in favor of Alamo National Bank against the city of San Antonio, of which the material parts, omitting the descriptions of the warrants, read as follows: "It is, accordingly, considered by the court that plaintiff, Alamo National Bank, have and recover of defendant, city of San Antonio, $8,-

269.81. And it appearing to the court that said indebtedness is based upon and evidenced by warrants issued by defendant corporation to the persons, at the dates, for current expenses of defendant city and numbered as follows, to wit: * * * And it further appearing to the court that, under the charter and ordinances of defendant city, plaintiff has a lien upon the general fund of defendant city derived by it from taxation for the fiscal year 1903–04 to secure the payment of said warrants in the order of their said numbers: It is therefore further considered by the court, and it is so ordered, adjudged, and decreed, that said lien, for the purposes aforesaid, shall be and it is hereby established on said fund, and that the defendant corporation and Bryan Callaghan as its mayor, and Charles Hummel as its treasurer, and its and their successors in office, shall be and they are hereby severally enjoined and restrained from diverting or using in any wise such part of said general fund as is now or may hereafter become applicable to the payment of said warrants in said order of their said numbers. It is further considered by the court that plaintiff have and recover of defendants all costs in this behalf incurred or expended, except the costs growing out of the temporary restraining orders heretofore issued and the proceedings in connection therewith and their dissolution, which said costs are to be paid by plaintiff and for which let execution issue." This judgment was affirmed in this court, and writ of error denied by the Supreme Court, as stated in our statement of the nature of the suit.

Second. The plaintiff's petition in said case contained a prayer for judgment for the amount of the indebtedness evidenced by the warrants described in said judgment and for costs, for temporary injunction, and for mandamus upon final hearing requiring payment to plaintiff, as fast as collected, all sums of money collected for the fiscal year of 1903–04, either as back taxes or otherwise, not already legally made applicable to the payment of claims superior to those of plaintiff.

The defendant answered stating that under its charter warrants are only a lien upon the funds for the fiscal year whenever the same may be collected, and are required to be paid according to seniority; that those held by the bank were for the last month of the fiscal year, and are therefore the last to be paid; that warrants in excess of the total income were void; that for the fiscal year 1903–04 about $45,000 in taxes was uncollected, which was being collected and applied to the payment of warrants in their due order, and which was more than sufficient to pay plaintiff's claim; and that said warrants had not been paid for the reason that no funds were or had been on hand which could be applied to their payment, but that they would be paid according to their

order when funds should be available for that purpose. We quote paragraph 5 of the answer: "Defendant further says that plaintiff is not entitled to any judgment against defendant on said warrants, because it is provided by said charter that all approved and audited claims against it shall be paid by warrant upon the city treasurer, which shall be numbered, designating the fund out of which the same are payable, but such warrants shall not bear interest and shall be paid in the order of their issuance by months and by numbers, so that no preference shall be shown to any persons; but said warrants shall be drawn in the same order as the claims may be audited, approved, or established; that plaintiff's claim, if any it has, is merged in said warrants just as a judgment would be; that, if judgment be rendered, a new warrant would have to be issued in evidence thereof; that plaintiff is not entitled to interest on said warrants and not entitled to new warrants in lieu of those already issued, it not appearing that defendant city is contesting the validity thereof or denying its obligation to pay out of funds when available, as by charter required." Then follow several paragraphs setting out in detail the financial condition of the city at that time. A copy of an ordinance is attached as an exhibit, which ordinance creates special funds for the year 1903–04, gives a lien on such funds for the payment of the warrants respectively issued against the same, and provides manner of payment.

Sections 2 and 3 of said ordinance read as follows:

"Sec. 2. That the mayor be and he is hereby directed to draw and issue warrants of the city of San Antonio, against said respective special funds at the end of each month, except said library funds and said interest and sinking fund, for the current expenses of the city of San Antonio, each warrant to be drawn against the particular special fund to which it is chargeable as part of the current expenses of said city for said year, he being specially directed, however, at the end of the present month to draw warrants not only for this month, but for previous months of said year in so far as any of the expenses chargeable to said respective funds remain still unpaid, each of which warrants to show upon its face the month's expense of which it represents a part, and such warrants shall be paid by the treasurer out of the respective funds against which said warrants are respectively drawn in the order of the months; that is to say, the warrants representing the first month's expenses shall be paid first out of their special fund as it comes in under the provisions hereinafter stated, and the warrants representing the second month's expenses shall be paid second, and so on until all said warrants are paid out of said special funds, and each warrant shall show on its face that the payment out of said

fund is postponed until after sufficient money has been collected, and paid into the special fund out of which it is payable to meet the warrants issued against said fund authorized under the provisions of any section of this ordinance, for previous months; the total of the warrants drawn against either special fund not to exceed the amount of said special fund, provided above, and all warrants to be drawn for immediate payment.

"Sec. 3. That all revenues derived by the city of San Antonio under its taxing power, with the exception of such as may be derived from the exercise of power of levying and collecting special taxes for special purposes, for the fiscal year ending May 31, 1904, shall be paid to the treasurer of this city, and held by him to the credit of said respective special fund in the proportion that each of said funds bears to the entire amount of taxes so levied for said year, such payments to be made to the treasurer as collected, whether collections during said fiscal year or afterwards, and to be applied by him to the payment of said warrants under the provisions of the previous section of this ordinance."

Plaintiff, by supplemental petition, alleged that defendant did not at the times when said warrants were issued have, nor has it since had, in its treasury funds for the year 1903–04 sufficient to pay said warrants, and that it failed and neglected to collect the taxes for said year and apply the proceeds thereof to the payment of said warrants; that said warrants were drawn for immediate payment; and that defendant diverted money to the amount of $17,626.85 for purposes not authorized which had the effect of depriving plaintiff of money which would otherwise have been applicable to the payment of its warrants.

Defendant filed a supplemental answer, but we deem it unnecessary to state its contents.

Third. The warrants sued on were issued for current expenses of the city for the fiscal year beginning June 1, 1903, and ending May 31, 1904. They were dated May 31, 1904, and were for the current expenses for the month of May in the fiscal year 1903–04, and were authorized by the ordinance attached to defendant's answer, which was the complement of the budget ordinance for said year, approved May 28, 1903, which fixed the amounts to be expended for each purpose.

Fourth. The warrants were drawn on the general fund, and recited that they were drawn to pay current expenses for May, 1904, account of some one of the departments of the city, and were signed by the mayor and attested by the city clerk. They contained an indorsement signed by the drawee, as follows: "I hereby transfer the within warrant, together with the lien on the special funds, to bearer, for value received."

Fifth. On January 18, 1904, the city council levied taxes for the year 1903–04 as follows: A poll tax of $1, and ad valorem tax, for general purposes, of $1, upon every $100 valuation of property; also taxes to pay interest on bonds and provide a sinking fund, for the support of the public schools and the Carnegie Library, and also an occupation tax.

Sixth. "That at the time said warrants were drawn there were no moneys in the 1903–04 general fund applicable to the payment of same, but as moneys were collected from taxes due for the year 1903–04 from time to time thereafter, applicable thereto, the same were turned into said fund until, at a regular meeting of the city council on November 7, 1910, there was a transfer of excess in other funds made to the 1903–04 fund sufficient to retire all warrants drawn against said 1903–04 fund." Warrants could have been taken up at the time and for the amounts following: March 31, 1908, $387.56; April 30, 1908, $100; May 31, 1908, $225; August 31, 1908, $80; September 30, 1908, $80; October 31, 1908, $80; November 30, 1908, $160; December 31, 1908, $80; January 31, 1909, $80; February 28, 1909, $80; March 31, 1909, $150; April 30, 1909, $65; May 31, 1909, $195; June 30, 1909, $65; July 31, 1909, $126.95; September 30, 1909, $84; October 31, 1909, $328.75; November 30, 1909, $216; December 31, 1909, $52; January 31, 1910, $84; February 28, 1910, $338; March 31, 1910, $352; April 30, 1910, $50; May 31, 1910, $230; June 30, 1910, $180; July 31, 1910, $50; September 31, 1910, $50; November 30, 1910, $4,300.55.

Seventh. "The treasurer of said city paid warrants in the order in which they were issued and dated and according to their numbers, and as moneys would come in to the 1903–04 fund from taxes, he would make provision for each warrant by retaining the amount thereof if not presented, and would not pay a subsequently numbered warrant unless the anteriorly issued warrants had either been paid or there was sufficient money in the fund with which to do so."

Eighth. "That the treasurer of said city notified said Alamo National Bank from time to time as he had sufficient funds to retire warrants, and requested said bank to present said warrants and receive the money, but after the rendition of said judgment, said bank refused to do so unless the same were credited on the judgment, and claimed that said warrants were merged in said judgment, and after the rendition of said judgment plaintiff held the said warrants subject to the order of the city and was ready at all times to receive payments to be credited on the judgment."

Ninth. On November 1, 1910, the city clerk wrote the bank that arrangements would be perfected on November 7th to pay all city warrants held by the bank against the 1903 general fund, and to consider the communication as a tender of the amount due on such

warrants. On November 2, 1910, the bank wrote the city clerk stating that the warrants had been merged into a judgment recovered March 19, 1908, bearing interest at 6 per cent. per annum from its date, and stating further that it would be glad to have the judgment and interest paid, with, of course, the costs of suit, and that the warrants as advised were subject to the city's order. On November 14, 1910, the city notified the bank that the city treasurer would pay on presentation all warrants held by it as originally drawn against the 1903 general fund.

Tenth. "That afterwards, on or about December 1, 1910, defendant city treasurer offered plaintiff to take up and pay the full amount of all said warrants upon surrender of the same, which plaintiff, through J. N. Brown, its president, refused, but offered to accept any moneys so tendered by defendant city on account and as a part payment of plaintiff's said judgment against said city, principal and interest. The city offered to pay the face amounts of the warrants only, conditioned that such payment be received in full discharge of the judgment, without interest."

Eleventh. "That the amounts of said warrants are in the city treasury and have at all times been in said treasury since the dates in the statement above mentioned, and are subject to the holders of said warrants and will be paid to said holders of said warrants respectively, upon presentation of the same at the city treasury."

Twelfth. "That all of said warrants are in the possession of plaintiff bank and have never been surrendered to said city. The same are being held by the bank and will be turned over to the city when the city pays said judgment and interest."

Thirteenth. At the date of the rendition of the judgment in this case awarding mandamus, there was on hand in the 1903–04 general fund an amount sufficient to pay said judgment and interest.

### Opinion.

The trial court concluded as a matter of law: First, that the warrants were merged in the judgment, and that the same is a valid subsisting claim against the city, which under the law and the opinion of this court in the original case bears interest at the rate of 6 per cent. per annum; second, that the city's tender was insufficient because interest was not tendered, and the offer to pay the principal was not a sufficient tender, and also because such offer was conditioned upon its acceptance being in full satisfaction of the judgment; third, that the warrants being merged in the judgment should be canceled and surrendered to the city as the rendition of the judgment extinguished them as such; fourth, that plaintiff was entitled to the relief prayed for.

[1] The first four assignments of error question the correctness of the court's ruling in holding that the original judgment bears interest at the rate of 6 per cent. from its date. It is contended that the city charter prohibiting the payment of interest on warrants will be read into any judgment on warrants, and that such judgment will not bear interest, especially where the same is silent on that question. Upon appeal to this court in the original case, the judgment dated March 18, 1908, was attacked by an assignment of error in the following language: "The court erred in rendering such a judgment as will bear interest and in not providing that the same shall not draw interest." This court (52 Tex. Civ. App. 561, 114 S. W. 910) overruled the assignment, citing a number of cases bearing on the question of judgments bearing interest. It is true that appellees then stated in their brief that if the warrants were not merged in the judgment, as they contended, then that the provisions of the charter with respect to interest on warrants would be read into the judgment. It is, however, apparent from the opinion in the case that the action of this court was based upon the theory that under the statute the judgment bore interest. We are therefore of the opinion that the trial court was correct in holding the question whether the judgment was one bearing interest to be res adjudicata.

[2] But, had the question of interest not been raised upon the former appeal, we would nevertheless hold that said judgment bears interest. The judgment does not purport to be an adjudication of the existence of an indebtedness not due, but to be a judgment for a specific sum of money then due, payment of which could, however, only be exacted out of the funds then applicable or which might thereafter become applicable to the payment of said warrants in the order of their numbers. The clause that the funds were to become applicable in the order of the numbers of the warrants was doubtless inserted because the holders of intermediate warrants would be entitled to have same paid in their order.

Our statute makes no exception with respect to judgments rendered upon claims which bear no interest, but provides that all judgments shall bear 6 per cent. interest unless founded upon a contract calling for a greater rate of interest, not exceeding 10 per cent. Article 4981, Revised Statutes 1911. It is true that in the case of Hawthorne v. State, 39 Tex. Civ. App. 122, 87 S. W. 839, the court held that said article of the statutes did not apply where recovery was had for a breach of a liquor dealer's bond, and that in such case the judgment should not bear interest. The Hawthorne Case was very reluctantly followed in White v. Manning, 46 Tex. Civ. App. 298, 102 S. W. 1162. See King's Conflicting Cases, vol. 3, § 91, wherein attention is called to the holding in said cases, and also to the case of

Baum v. Daniels, 55 Tex. Civ. App. 273, 118 S. W. 754, involving the recovery of the penalty for exacting usurious interest, wherein it is held: "No interest can be recovered on penalties in the absence of some statutory provision to that effect. The rule, however, is otherwise after the judgment is rendered. In this state all judgments bear interest from the date of rendition." We consider the statute a sufficient guide with reference to the question now being considered, and do not believe that we should make or recognize any exceptions to its provisions. When a judgment is rendered for the recovery of a certain amount of money, the law provides that for the retention of such money after the date of rendition of the judgment interest shall be paid, and we think this case comes within such rule. This conclusion is in no way contradictory of the holding in the case of Heuerman v. Church, 150 S. W. 212, to the effect that the warrants of the city of San Antonio do not bear interest, and that interest cannot be paid on the same. When conditions are such as to justify the rendition of a judgment upon warrants, the same comes under the provisions of the statute and bears interest. In this connection, we call attention to the cases cited by this court in the opinion upon the appeal taken in the original case.

By the fifth assignment it is contended that the warrants were not merged in the judgment, and four propositions are urged, the substance of which amounts to an ingenuous contention that the judgment in question should be held to be merely a determination of the existence and extent of the cause of action and of no higher dignity than the same; hence also noninterest bearing. We regard this question as settled adversely to appellant's contention in the former case, and besides see no reason for changing the view already stated, to the effect that the judgment is for the recovery of a certain amount of money, and bears interest the same as judgments rendered upon other noninterest-bearing claims. We find no repugnancy between the statute allowing interest on judgments and the charter provision inhibiting the payment of interest on warrants.

[3] The sixth, seventh, and eighth assignments are not followed by statements and will not be considered. In the main, they raise contentions already disposed of.

[4] The ninth, tenth, and eleventh assignments complain because the court directed the payment of the costs incurred in the original case; the contention being that the petition in this case contains no prayer for such relief. It is true that plaintiff prayed for writ of mandamus requiring the payment of such judgment and interest thereon and omitted to mention costs. There was also a prayer for general relief, and we are of the opinion that the court did not err in directing, under such prayer, the payment of the costs, were it conceded that the costs are not a part of the former judgment.

[5] Assignments 12 to 15 raise the issue whether appellant's tender was sufficient; it being contended that the city offered to pay the warrants in their regular order as it had funds on hand, and therefore would not be liable for interest. It is not contended that appellant ever offered to make payments on the judgment except upon condition that no interest would be exacted.

[6] The sixteenth assignment complains because the court did not cancel the warrants in its judgment after finding that same were extinguished by reason of the former judgment. No relief of this character appears to have been asked by appellant, and besides, being extinguished by the former judgment, we see no necessity for any cancellation thereof in this suit.

We cannot agree to the views of this case so ably presented by counsel for appellant in his brief, and regard it unnecessary to go into a lengthy discussion of the question when and under what circumstances judgments should be construed as a continuation of the old debt in a new form. The question of interest upon judgments is settled by statute, and in this instance has been already judicially determined, and we therefore do not think the cases, cited in appellant's brief with respect to judgments being of no higher dignity than the cause of action, are applicable to this case.

The judgment is affirmed.

### On Motion for Rehearing.

Our first finding of fact is so amended as to include the following description of the warrants mentioned in the judgment:

All warrants were dated May 31, 1904, the last day of the fiscal year 1903–04, the numbers thereof were given, beginning with number 6,285 and ending with number 6,582, but not running in consecutive order; numbers being skipped all along. The name of each payee is given, as well as the amount and character of expense for which each warrant was issued; all being issued in payment of expense for one of the departments of the city, and amounting in the aggregate to $8,269.81.

Our second finding of fact is amended so as to include section 1 of the ordinance, of which sections 2 and 3 are contained in our said finding; said section, omitting list of items in the budget, being as follows: "That the following special funds for the following special purposes constituting the current expenses of the city of San Antonio, for the fiscal year beginning June 1, 1903, and ending May 31, 1904, are hereby created, provided and set apart out of the current revenues of said fiscal year, and are declared to be disbursable only for the respective purposes, for which said several special funds are created; and every person who may hold at any time a warrant drawn against either

of said funds and in accordance with and under the provisions of any section of this ordinance, is hereby declared to have a claim and lien upon such funds extending to the revenues from which said fund is to be derived as hereinafter stipulated; said special funds and special purposes for which they are disbursible being as follows, to wit: * * * Said amounts being the same amount heretofore mentioned and provided for in an ordinance providing for the expenditures of the city of San Antonio, for the fiscal year beginning June 1, 1903, and ending May 31, 1904, adopted May 28, 1903. This section of this ordinance being intended to enlarge and make said former ordinance more specific."

We are asked to consider assignments 6, 7, and 8 because reference is made to propositions and statements under the preceding assignments. Assignments 6 and 7 raise the same questions as the preceding assignments, and, the propositions having been held not tenable, the same holding will as a matter of course be applied to these two assignments.

[7] Assignment No. 8 relates to another matter, and cannot be considered as a proposition because it embraces two distinct propositions, nor are the propositions referred to germane to such assignment, for which reasons said assignment will not be considered.

Motion overruled.