

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Edgar Pfeil
County Attorney
Guadalupe County
Seguin, Texas

Dear Sir:

Opinion No. O-2083
Re: Whether a common school dis-
trict can refund taxes paid
to such district where such
taxes were paid through mutual
mistake on property adjacent
to but not within such dis-
trict; the statute of limita-
tion upon such refund and the
proper school fund out of
which refund is to be paid.

We are in receipt of your letter of March 14,
1940, in which you request an opinion of this department
in answer to six questions based on the fact situation con-
tained therein as follows:

"Common School Districts numbers 31 and 29
are adjoining districts. The property in ques-
tion actually lies in district No. 31 near the
line separating said district from district 29,
and until 1925 was correctly assessed in dis-
trict No. 31.

"In 1925 the ownership of this property
passed to Pieper, and in that year said proper-
ty was erroneously assessed in district No. 29.
In 1930 the ownership of said property passed
to Vivroux and others and the erroneous assess-
ment in district 29 was continued until this
mistake was discovered after the payment of the
1938 taxes. For the fourteen years from 1925 to
1938 inclusive, this property was assessed in
District 29 (instead of in District 31) and the
taxes paid into district No. 29 under the mutual
mistaken belief that the property actually lay
in District 29. The taxes during such fourteen
years were both paid and received in strictest
good faith."

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Edgar Pfeil, page 2

Based on the above facts, you ask the following questions:

## QUESTION NO. 1

"May the tax payers recover from District No. 29 the full amount of the $423.50 paid through such mutual mistake to District No. 29?"

In our Opinion No. O-1266 we held that taxes could be refunded by a school district to a taxpayer who owns property adjacent to a school district and has been paying taxes to the wrong district under a mutual mistake of fact. In our opinion we pointed out that the rule announced therein would be subject, however, to a plea of limitation which might arise under certain facts in each individual case. As we feel that this opinion answers your question No. 1, a copy of the same is enclosed herein.

## QUESTION NO. 2

"Can District No. 31 legally charge this property with delinquent school taxes on this property which is actually located in District 31 but on which taxes were erroneously paid during these fourteen years to District 29."

Article 2795 of the Revised Civil Statutes provides that the commissioners' court shall also levy upon all taxable property within a common school district the rate of taxes voted by said district. Said Article further provides that the taxes of a common school district are to be assessed and collected by the county officials the same as taxes levied for county purposes. It is a well established rule of law that taxes may be assessed and collected on property which has been omitted from the tax rolls for back years only when there is specific statutory authority authorizing such an assessment and collection. See State vs. Cage, 176 S. W. 928 and Millers Mutual Fire Insurance Company vs. City of Austin, 210 S. W. 829. Because of the fact that the taxes of a common school district are collected like county taxes by the county officials, the statutes authorizing the assessment of property omitted from the tax rolls by the commissioners' court is in our opinion sufficient statutory authority to authorize the assessment and collection of taxes on property thus omitted from the tax rolls of the common school district.

Honorable Edgar Pfeil, page 3

Article 7346 of the Revised Civil Statutes provides in part as follows:

"Whenever any commissioners court shall discover through notice from the tax collector or otherwise that any real property has been omitted from the tax rolls for any year or years since 1884, or shall find that any previous assessments on any real property for the years mentioned are invalid, or have been declared invalid for any reason by any district court in a suit to enforce the collection of taxes on said properties, they may, at any meeting of the court, order a list of such properties to be made in triplicate and fix a compensation therefor; the said list to show a complete description of such properties and for what years such properties were omitted from the tax rolls, or for what years the assessments are found to be invalid and should be canceled by any district court in a suit to enforce the collection of taxes." (Underscoring ours).

Article 7347 of the Revised Civil Statutes reads in part as follows:

"When said list has been so made up the commissioners court may, at any meeting, order a cancellation of such properties in said list that are shown to have been previously assessed, but which assessments are found to be invalid and have not been canceled by any former order of the commissioners court, or by decree of any district court; and shall then refer such list of properties to be assessed or re-assessed to the tax assessor who shall proceed at once to make an assessment of all said properties, from the data given by said list (the certificate of the Comptroller as to/assessments or re-assessments made by the tax assessor shall not be necessary as required under Article 7207, but he shall furnish all blank forms needed, that uniformity may be had in all counties), and when completed shall submit the same to the commissioners court, who shall pass upon the valuations fixed by him; and, when approved as to the values, shall cause the taxes to be computed and extended

at the tax rate in effect for each separate
year mentioned in said list; and, in addition
thereto, shall cause to be added a penalty
equal in amount to what would be six per cent
interest to the date of making said list from
the date such properties would have been de-
linquent had same been properly rendered by
the owner thereof at the time and for the
years stated in said list; * * *"

It is the opinion of this department, based upon
the above articles, that the commissioners' court would have
the authority to assess common school taxes against the
property in question because the same has been omitted from
the tax rolls of District No. 31. You call our attention
to Article 7156, Revised Civil Statutes, which reads as
follows:

"Any lands which may have been assessed
in any county according to the abstract of
land titles, and the taxes paid thereon ac-
cording to law, shall not be afterwards sub-
ject to the payment of taxes for the same
period in a different county, although a sub-
sequent survey and determination of the county
boundaries/may show said lands to be in a dif-
ferent county from that in which they were
originally assessed; and any sales of such
lands for alleged delinquency shall be illegal
and void."

The above quoted Article applies in a case where
taxes have been paid in the wrong county according to law.
We do not believe that this Article would fit the situation
here because after the taxes have been refunded by District
No. 29 the taxpayer would not be in a position of having
paid taxes in the wrong county and, therefore, this Article
would not be a bar to the assessment and collection of tax-
es against him by District No. 31. You also call our atten-
tion to Article 7298 which reads in part as follows:

"* * * provided, that no suit shall be
brought for the collection of delinquent
taxes of a School District or Road District
unless instituted within ten years from the
time the same shall become delinquent.* * *"

Honorable Edgar Pfeil, page 5

It might seem that the effect of the above quoted Limitation Statute would be that District 31 could not assess and collect taxes against the property in question back of 1930. You are advised, however, that the Limitation Statute deals with the bringing of a suit for the collection of taxes within ten years after the same shall become delinquent. The question then arises whether or not the taxes for the back years which have never been assessed and collected by District 31 have ever become delinquent so as to be barred by this Limitation Statute. It is our opinion that the same have not become delinquent within the meaning of the Limitation Statute. The Supreme Court of Texas in the case of Clegg vs. State, 42 Tex. 605, stated as follows:

"It has been repeatedly decided, that no right of action exists for the non-payment of an ad valorem property tax, until an assessment has been made as provided by law."

While the commissioners' court in assessing taxes against property which has been originally omitted from the tax rolls is assessing a tax against that property for each of the back years, still it cannot be said that those taxes were delinquent until after the time of the assessment by the commissioners' court. This construction is recognized by the Legislature in Article 7347, supra, which reads in part as follows:

"* * * and, in addition thereto, shall cause to be added a penalty equal in amount to what would be six per cent interest to the date of making said list from the date such properties would have been delinquent had same been properly rendered by the owner thereof at the time and for the years stated in said list; * * *"

We find here the Legislature saying that the tax would have been delinquent if the property had been rendered by the owner. The only logical inference resulting from that statement is that since such property was not rendered and not assessed then the taxes were not delinquent. It is our opinion, therefore, that the Limitation Statute would be no bar to the assessment and collection of the taxes against the property in question by District 31 and that the same may be properly assessed and collected by the commissioners' court.

Honorable Edgar Pfeil, page 6

### QUESTION NO. 3

"Would the Two Year Limitation Statute apply under the circumstances of this case and entitle the tax payers to recover only that part of the $423.50 not barred by the Two Year Statute; or, would the statute of Limitations be considered as tolled as a matter of law, under the circumstances of this case, and thereby entitle the tax payers to recover the full $423.50 from said District No. 29."

The exact fact situation presented in your letter confronted the Austin Court of Civil Appeals in the case of Pfluger vs. Hutto Independent School District, 34 S. W. (2d) 632. In that case the court held that the taxpayer was entitled to recover taxes which had been paid under a mutual mistake of fact but that his recovery was barred by the two year Statute of Limitation under the particular facts in that case. You are advised that whether or not the two year Statute of Limitations would operate as to bar the collection of the taxes in your case would depend upon the particular facts which confront you. If there are no facts which would bring your case within the rule announced in the Pfluger case, supra, then the recovery of the taxes would be allowed in accordance with our Opinion No. 1266.

### QUESTION NO. 4

"Would the trustees of Common School District No. 29 be authorized to disregard any question of limitation, if it should be found that the Two Year Statute of Limitation does apply, and as a matter of fairness to all parties concerned, refund to the tax payers the $354.75, which was paid to District No. 29 over and above the $68.75 actually due to District 31 for such fourteen years, and pay directly to District 31 the $68.75 to which District 31 is entitled, or should the trustees pay the full amount of $423.50 to the tax payers and let them in turn pay out of that the $68.75 to District 31?"

In this question you are concerned with the right of the trustees of the common school district to disregard any question of limitation. The exact question which you

Honorable Edgar Pfeil, page 7

present was passed upon by the Beaumont Court of Civil Appeals in the case of Frost vs. Fowlerton Consolidated School District No. 1, 111 S. W. (2d) 754. In that case the facts were identical with the facts you present in your letter as to the payment under a mutual mistake of fact. The court held that the school district had the power to disregard any question of limitation and to refund the taxes paid under the mutual mistake of fact. The court stated as follows:

> "Appellee had the power to renew Masterson's claim for a refund of the taxes against any defense of limitation that might have been available to it. Under the holding of our Supreme Court in Hatcher v. State, 125 Tex. 84, 81 S. W. 2d 499, 98 A.L.R. 1213, appellee is a body politic and corporate, and may contract and be contracted with, sue and be sued, and, in its limited sphere, is a local public corporation of the same character as a municipal corporation; as such, it had the power to renew and extend a past-due obligation, though barred by limitation. City of Tyler v. Jester & Co. (Tex. Civ. App.) 74 S. W. 359, affirmed 97 Tex. 344, 78 S. W. 1058; City of Houston v. Jankowskie, 76 Tex. 368, 13 S. W. 269, 18 Am. St. Rep. 57."

You are therefore advised that the trustees would have the authority to disregard any question of limitation. As to the method of refunding the money we find no authority for any other procedure than to return the money to the taxpayers who have paid the same. There is no statute which would authorize the School District No. 29 to deliver such money to School District No. 31. It is the opinion of this department that the money should be refunded to the taxpayers who have paid the same and that the proper procedure then is for said taxpayers to pay the tax owing to District 31 after the same have been assessed by the commissioners' court.

Your questions No. 5 and No. 6 deal with the manner of repayment of the money by District No. 29. Said questions read as follows:

Honorable Edgar Pfeil, page 8

## QUESTION NO. 5

"In case refund of the full amount is permitted to be made by District No. 29, may such refund be made out of the Local Maintenance Fund and out of the Interest and Sinking Fund of the District in proportion to the percentage of the total that is deposited in each of these two funds of the district?"

## QUESTION NO. 6

"If either fund does not have sufficient surplus at this time to pay the full $423.50, would the trustees of District 29 be authorized to issue a warrant on such funds to be paid at such a future date as another surplus will exist?"

The same questions confronted the court in the case of Frost vs. Fowlerton School District, supra. In that case the contention was made that the tax money had already been expended by the school district. In that case the taxes which had been erroneously paid were paid for the years 1911 through 1926. The school district issued a warrant on August 12, 1931, some five years after the last taxes were paid, for the repayment of the taxes erroneously paid. The warrant was issued on the local maintenance fund and the court held that the same had been properly issued even though the money collected from the taxes had been expended by the district and further held that the warrant was properly to be paid out of the maintenance fund. The court stated as follows:

"The fact that the taxes paid by Masterson--the very money paid by him--had been expended by appellee and was not in its possession when the warrant was issued did not take from its trustees the power to issue the warrant. Bridgeport & etc. v. City of Bridgeport, 103 Conn. 249, 130 A. 164, 169, involved taxes paid for the years 1915-1922 on property not within the limits of the taxing district; after holding that the taxes were not 'voluntarily' paid, the court said: 'The remaining reasons of appeal relate to claims that the defendant, having received the money, mingled it with its general funds, expended it for municipal purposes, and, not having in its possession the

Honorable Edgar Pfeil, page 9

identical funds, the taxpayers, who were not
such when the plaintiff paid the money, cannot
be now called upon, or taxed, to pay it back,
and therefore the court erred in rendering
judgment for the plaintiff. The defendant says
that because it has not the identical money it
received from the plaintiff it should not be
required to return it. It claims as a princi-
ple of law that, because it has spent the money,
received no matter how wrongfully or uncon-
scionably from the plaintiff, it cannot now be
recovered back. The mere statement of such a
proposition seems to be a sufficient refutation
of it. Where a party receives money from ano-
ther which in equity and good conscience it
ought not to keep it cannot, by spending it,
escape the liability to repay it. The law
reaches further than to the identical coins
and bills which are received. The defendant
city is not the agent of the taxpayers. It is
the inhabitants, including the taxpayers, act-
ing under a charter as a municipal corporation
with perpetual existence. As such corporation
it has acted, levied the tax, and received the
money. It has no shadow of right in good con-
science to retain the money so paid. The
plaintiff brought the action as soon as it dis-
covered the error. Neither the mistake of the
plaintiff in paying, or the good faith of the
defendant in receiving, nor the fact that the
money has been spent, gives the defendant any
equitable right to retain the money. Gilpatric
v. Hartford, supra (98 Conn. 471, at page) 481
(120 A. 317).'

"* * *

"Under this restriction, possibly appellee
could not have paid the warrant from the state
and county funds, but appellee had other funds
derived from local taxes, tuition fees, and, etc.
* * *

"In Adams v. Miles (Tex.Com.App.) 35 S. W.
2d 123, 127, the Commission of Appeals held
that article 2827 authorized school trustees to
use the maintenance fund 'for any reasonable
purpose deemed by them sufficient, having rela-

tion to the conduct of the schools in that district.' See, also, Churchill v. Board of Trustees, Ky., 89 S. W. 122, 124, where it is said: 'In creating these corporations the Legislature did not contemplate, in defining their powers, to prevent them from being just, or to take away from them the power to do right when an innocent mistake had been made. The power to conduct the school necessarily carries with it the power to meet those obligations which are justly incurred in conducting the school.'"

You are advised, therefore, that the money could be refunded out of the maintenance fund of the school district. It is the opinion of this department that the district could refund out of the interest and sinking fund the portion of the tax money erroneously placed therein. There could be no question of diversion of funds because the tax money in question never did belong in the interest and sinking fund nor in any other fund even though it was mistakenly paid into said funds. Therefore the district could refund out of the interest and sinking fund the portion paid into said fund over the period of years and could refund out of the maintenance fund the portion paid into said fund or on the other hand the entire amount could be refunded out of the maintenance fund on the authority of the above holding of the Beaumont Court of Civil Appeals.

It is our opinion also that this money should be refunded when collected into the funds even though said funds do not now have sufficient to make the refund. The debt here is one which was accrued not in one year but over a period of fourteen years and the money may be refunded when a sufficient amount is collected to do so.

We trust that the above discussion will advise you as to the proper procedure to be taken in this matter.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Billy Goldberg*

Billy Goldberg
Assistant

APPROVED MAY 11, 1940

BG:jm

Encl.

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE

APPROVED
OPINION COMMITTEE
BY
CHAIRMAN